[L. A. No. 2776. In Bank.—October 25, 1912.]

## J. T. GORDON, and EMMA J. GORDON, Appellants, v, COVINA IRRIGATING COMPANY (a Corporation), Respondent.

WATER—CONSTRUCTION OF CONTRACTS—WATER DELIVERED TO IRRIGA-
TION COMPANY FOR CARRIAGE.—In an action brought to have it
determined that the plaintiffs·are entitled to be furnished by de-
fendant with water for irrigating purposes upon certain lands, it
is held, upon a construction of the evidence, including certain con-
tracts upon which the plaintiffs based their rights, that the defendant
was under no obligation to deliver to the plaintiffs, as members
of a class designated in such contracts as "old users" of a portion
of the water carried in its ditches, any water except such water
as might be received by it from them to be carried in its ditches
for distribution to them, and that it was not required to furnish
to either of the plaintiffs any of its own water acquired for its
stockholders and for sale if there was a surplus over the amount
required for the stockholders.

ID.—PARTIES IN ACTION TO DETERMINE RIGHTS TO WATER AS BETWEEN
MEMBERS OF A PARTICULAR CLASS.—Whether the plaintiffs had
acquired any right, as against other members of the class of old
users, to be furnished with a greater portion of the old users' water
than they actually delivered to the defendant for carriage in its
ditches, could only be determined in an action in which such other
old users were joined as parties.

ID.—RIGHT OF WAY FOR WATER DITCH—EASEMENT IN GROSS—COVE-
NANT FOR THE RIGHT TO USE WATER.—In view of all the circum-
stances appearing in this case it is held that a provision in a deed
of a right of way over the lands of the grantor, for use as a
water ditch, that the grantor should "have the right to purchase
and use the water of said ditch upon the same terms and condi-
tions as the stockholders" of the grantee, created a right that was
merely personal to the grantor, and not an appurtenance to any
particular land, and that the right did not pass by a transfer of
the land over which the ditch was constructed.

APPEALS from judgments of the Superior Court of Los
Angeles County and from orders refusing a new trial. Curtis
D. Wilbur, Judge.

The facts are stated in the opinion of the court.

Ward Chapman, for Appellants.

Anderson & Anderson, for Respondent.

ANGELLOTTI, J.—We have in this case appeals by the plaintiffs (husband and wife) from the judgments and orders denying a new trial in two separate actions, brought to have it determined that the plaintiffs are entitled to be furnished by defendant with water for irrigating purposes upon certain lands. In one action, Emma T. Gordon sought such a determination as to a tract of land described as the North 20½ acres of the W. 24½ acres of the S. W. ¼ of section 25, T. 1 N. R. 10 W., S. B. M., which we shall hereinafter designate as parcel "A." In the other action J. T. Gordon sought such a determination as to a ten acre tract, being lot 2, section 27 of the same township and range, hereinafter designated parcel "B," an adjoining eight acre tract in section 23 of the same township and range, hereinafter designated parcel "C," and a forty-two and one-half-acre tract, originally the property of one J. G. Bower, hereinafter designated parcel "D." In Mrs. Gordon's action, the trial court concluded that she was entitled to water from defendant for only nine and twenty-three one hundredths acres of parcel "A," and as this right had never been denied by defendant and was expressly conceded by the answer, gave judgment that plaintiff take nothing by her action, without prejudice to her right to begin an action against certain other persons (termed "old users") and this defendant jointly, to assert any right she may claim to water for a greater acreage. In the other action, the court concluded: As to parcel "B," that Gordon had acquired by prescription the right to water for the southerly three acres only, at the rate of one inch for eight acres measured under four inch pressure; as to parcel "C" that Gordon was entitled to receive water at the same rate for 1.6 acres only; as to parcel "D," that he was not entitled to receive any water.

As to parcels "A," "B," and "C" the alleged rights of plaintiffs are based on certain contracts.

The defendant Covina Irrigating Company was originally named the Azusa Water Development & Irrigation Company, its name having been changed to the Covina Irrigating Company since the execution of the various contracts hereinafter

referred to. It was organized in the early eighties, and is a private mutual water company, its water, under its articles and by-laws, being distributed *pro rata* among its stockholders, only such surplus as is not needed for its stockholders being for sale for the benefit of the company. Prior to its organization, the ordinary flow of the San Gabriel River had been diverted during the irrigating season on both the east and west sides for irrigation purposes. On the east side, some of the water was taken out by an old ditch known as the "public water ditch," and used by a large number of irrigators who were known in subsequent transactions as "old users." None of the land described in the complaints was susceptible of irrigation from this old ditch, but a small portion of parcel "C," the evidence being such as to support a conclusion of 1.6 acres, had been irrigated by means of a lateral ditch connecting therewith. In 1882, J. T. Gordon and many others, being desirous of obtaining water for irrigating purposes from such river, began the construction of a ditch that would run from the river through their lands. Before the completion of this new ditch, the defendant began the construction of a cement ditch to carry water that it was developing by means of a tunnel in the San Gabriel Cañon. The Gordons and probably all who were interested in the new ditch then in process of construction, executed deeds to defendant of a right of way over their lands for such cement ditch, the same to conform as near as possible to the line of the new ditch then being constructed, the grantors being given the right to use such ditch in common with the defendant, for conveying such water as they themselves owned or subsequently acquired, whether from the old public ditch or elsewhere. The cement ditch was completed by defendant in 1885 or early in 1886. About fourteen or fifteen acres of parcel "A," four or five acres of parcel "B" and about 3.5 acres of parcel "C" lie below this cement ditch. Water was at once turned into the ditch, but the evidence is such as to support a conclusion that at no time prior to 1890 was more than nine acres of parcel "A" irrigated, or more than the southerly three acres of parcel "B," or more than 1.6 acres of parcel "C." In June, 1888, a contract was entered into between defendant and some seventy or eighty persons, including the plaintiffs, who had been using water from said river by means of said ditch on

certain lands. This agreement recited that the right of each
of these persons to a *pro rata* share of the water flowing in the
Azusa water ditch (except 7-24ths) for irrigation and domestic
use on their lands (which were described and included all of
the parcels "A," "B," and "C"), had been recognized by
the water commissioners. The agreement then acknowledged
the right of each of these individuals to take from the San
Gabriel River "the quantity of water heretofore used by them
for irrigation and domestic use in and upon the hereinbefore
described lands, the quantity of water so claimed as aforesaid
being the quantity distributed to each by the aforesaid water
commissioners from the said public ditch for use upon the
premises aforesaid." It recited that defendant was willing
to allow such persons to run said water through its cement
ditch to said lands, and to acknowledge that the quantity
agreed to be delivered by it to them "belongs in the whole to"
them, as appurtenant to said lands. Defendant agreed to
receive at the mouth of its water ditch in San Gabriel Cañon
all the water belonging to them, and permit the same to flow
through its ditches to its laterals nearest said lands, said per-
sons to there receive it with sufficient pipes or ditches. Said
individuals, or old users, as they are generally styled, agreed
to deliver at the mouth of said ditch, their *pro rata* share of
said waters. Defendant agreed that if such water was so
delivered, it would carry and deliver it "in quantities of one
miner's inch to each and every eight acres of land," and when
there is any water so received, flowing into or through said
ditch, would give such old users the preference of use in the
proportions hereinbefore stated, "provided always, however,
that should the amount of water belonging" to such old users,
received at the mouth of the ditch, be less than the *pro rata*
share belonging to them which formerly flowed through the
Azusa public ditch, then the defendant agreed to deliver such
lesser quantity as shall bear the same relation of one to eight
acres as the water received bears to the *pro rata* share here-
tofore distributed to said users from the public ditch. It was
stated that the *pro rata* share claimed by each party was "one
one hundred and twenty-fifth part of all the waters thereto-
fore flowing in the Azusa public water ditch, less seven
twenty-fourths of the whole." Defendant agreed "to receive
the aforesaid water and to deliver at all times so long as it

continues to receive such water as herein agreed, one miner's inch to each eight acres of land described herein.'' The agreement fixed the price to be paid by the users for such service. By a supplemental agreement between the same parties, dated February 13, 1889, it was stipulated that the company would carry out its agreement even if it should develop that one or more of such persons should own and be able to deliver less than one one hundred and twenty-fifth of all the Azusa ditch water less seven twenty-fourths, but that no one shall be entitled to more than one inch of water for each eight acres for which he has turned over to defendant the old user right for water, and that ''no water shall be required of'' defendant, ''nor shall any of said parties have any right under this agreement in excess of the amount of water furnished by such old user to the company.''

What was called the ''compromise agreement,'' purporting to be an agreement of all parties claiming the waters of the San Gabriel Cañon, bearing date January 26, 1889, was introduced in evidence. This agreement was not recorded until November 2, 1889. The agreement provided for the division of *all* the waters of such cañon. The parties were as follows: The Azusa Water Company was the party of the first part. The defendant, under its old name, was the party of the second part. The Duarte etc. Co. and The Beardslee etc. Co. (westside companies) were the parties of the third part. The Azusa Land and Water Company, the Azusa Agricultural Water Company, and Kate S. Vosburg and Louise S. Macneil were the parties of the fourth part. Individuals signing the agreement ''and known as old users'' were the parties of the fifth part. It was agreed that so long as there may be an amount of water equal to the flow of one thousand seven hundred inches, miner's measurement under four-inch pressure, or any lesser amount, at the point of division between the parties of the third part and the other parties, 72-720ths should be taken by defendant, 216-720ths by the parties of the third part, 126-720ths by the parties of the fourth part, and 306-720ths was to be ''divided into as many parts as there were acres in the tract hereafter agreed to be known as 'The Azusa Water District,' and taken by parties of the fifth part and by the parties of the first and second parts *pro rata* in proportion to acreage represented

therein by said first, second, and fifth parties." It was stipulated that the first and second parties shall "represent all the acreage and take the water of all lands of the so-called old users who have turned over to such corporation the management and control of the water to which they are entitled." The first, second, and fifth parties agreed on the boundaries of the acreage constituting the tract to be known as the Azusa Water District, the same being set forth. Provision was made for the division among the parties of all water in excess of one thousand seven hundred inches. Provision was made as to the place whence the various parties might take their water, and also for the payment by the several parties of their proportion of the expenses. A committee of nine was provided for, one of whom was to be selected by defendant and two by the fifth parties, to represent all the parties and to have full charge from the source of supply to the point of division with the third parties (the westside users). Neither of the plaintiffs joined in the execution of this agreement or was by name designated as a party thereto. Only nine and twenty-three hundredths acres of parcel "A" (the Mrs. Gordon tract) were included within the boundaries of the district described therein, while some fourteen acres thereof lay below the cement ditch and could be naturally irrigated therefrom. No part of either parcel "B" or parcel "C" was included in such boundaries. About four or five acres of parcel "B" and about three and one-third acres of parcel "C" lay below such ditch and could be irrigated therefrom.

Mr. Gordon made known to defendant his objection to having his lands excluded from the compromise agreement, and a proposed contract was prepared by Mr. Wicks, a large stockholder of defendant, between the Gordons and the parties of the first, second, and fifth parts (the last being the old users) in the compromise agreement, reciting that the Gordons are "old users . . . through the old main ditch," and are entitled to share in the compromise, and stipulating that all of parcels "B" and "C," and an additional six acres more or less in parcel "A," "which can be irrigated from the cement ditch," is entitled to a water right equal to any similar area in said Azusa Water District, and that the Gordons shall be supplied with water from the cement ditch "out of the 306-720ths of the first 1,700 inches, and out of the 226-720ths of the water

above 1,700 inches.'' This agreement was executed by the defendant, by the Azusa Irrigating Company, and by only nine of the some seventy-five old users who had joined in the execution of the compromise agreement. This contract was delivered by defendant to Mr. Gordon, but there was testimony sufficient to support the conclusion that Mr. Wicks informed the board of directors of defendant, in the presence of Mr. Gordon, ''that in order to make the contract effective all the irrigators in the old district would have to sign it, to make it binding on the company.''

Ever since the execution of the compromise agreement, the committee of nine provided for therein has had entire charge of the distribution and delivery of water to the various companies, and the trial court found that ''the only water permitted by said committee of nine to flow to the defendant for use by old users under contract with the defendant . . . has been water appurtenant to lands and for use upon lands within the boundaries of said Azusa Water District,'' except that water for 1.6 acres of parcel ''C'' was permitted to so flow and has been received by defendant. Ever since 1890 from fourteen and one-half to fifteen acres of parcel ''A'' (the Emma J. Gordon tract) has been under cultivation, and water was delivered to it without objection, on the basis of one-eighth of an inch to the acre, on the theory that it was entitled to a fifteen-acre user water-right under the compromise agreement, from 1890 until the year 1902, when it was cut down to a 923-100ths-acre right. Such water the court finds was received by Mrs. Gordon ''not from the stock water of the defendant but from the old user water which was carried by the defendant, and to which the old users under contract with the defendant and owning land within the boundaries of the Azusa Water District were entitled.'' As to parcel ''C'' (the eight acre tract), no use of water was required or shown subsequent to the compromise agreement until ''some time in 1901 or 1902,'' when water was delivered for one season to a tenant. There was a conflict of evidence on the proposition whether this was stock or old user water, and the court found that it was ''stock water to which the plaintiff was entitled by virtue of stock of defendant company,'' but that plaintiff at that time demanded old user water therefor. A subsequent demand for old user water for

another season was never complied with. In 1906, Gordon set out this tract in orange trees. His demands for old user water for this tract have never been complied with. As to parcel "B" (the ten acre tract), the evidence was such as to support a conclusion that no water was ever received by Gordon for more than three acres. His demands for a larger portion of "old-user" water repeatedly made since May 12, 1902, have always been denied. These actions were commenced May 10, 1905. In addition to other findings, the court found in response to allegations to that effect made by the answers: 1. That the other parties to the contract of June, 1888, and the contract supplemental thereto were necessary parties to a determination of the questions involved relating to parcel "A," but not as to parcels "B" and "C," and, 2. That the causes of action set forth in the complaints are barred by the provisions of sections 318, 337, and 343 of the Code of Civil Procedure.

It is clear that whatever rights plaintiffs acquired under the contract of June, 1888, and the supplemental contract of February 13, 1889, to receive water for irrigation on parcels "A," "B," and "C," as against defendant, cannot be held to be affected by the so-called compromise agreement dated January 26, 1889. They were not parties to that agreement, and, of course, if they had been given rights by the prior agreements, those rights could not be affected by an agreement to which they were not parties.

Nor can they be held to have acquired any additional right by virtue of such compromise agreement (except as to the 9.23 acres of parcel "A" included in the water district described therein), or the attempted agreement of February 23, 1889, purporting to give them rights under the compromise agreement. As to the compromise agreement, the provision relied on by appellants to the effect that the defendant shall represent all the acreage and take the water of all lands of the so-called old users who have turned over to such corporation the management and control of the water to which they are entitled clearly had reference only to the acreage included in the water district specifically described in such agreement, and the old users on such acreage. The attempted agreement of February 23, 1889, on its face contemplated an execution by all the old users who had signed the compromise agreement.

Its provisions were of such a nature that it could not be effectual as against any of such old users who did not join in its execution. By its express provisions, the additional water to be given to Mrs. Gordon and all of the water to be given to Mr. Gordon was to be taken from the portion allotted by the compromise agreement to the acreage embraced in the water district described therein. So much of their land "as can be irrigated from the cement ditch" was to be added to and made a part of such water district, and thus made entitled to receive water belonging under the compromise agreement solely to the acreage described therein. As we have seen, the evidence was sufficient to support the conclusion that Mr. Gordon was informed that to make the attempted contract effective against defendant, all the irrigators in the old district would have to sign it. But independent of this, the attempted contract was such on its face as to show the necessity for this.

The material question then is as to the rights of the plaintiffs against defendant under the contract of June, 1888, and the supplemental contract of February 13, 1889. We are of the opinion that it must be held, as was practically held by the lower court, that the defendant simply undertook to take such water as might be delivered to it by the so-called old users, and carry it for them through its ditch to their lands, at a prescribed charge, the amount to be furnished any old user, however, not to exceed more than one inch of water for each eight acres of land, or such lesser quantity as shall bear the same relation of one to eight acres as the water received bears to the *pro rata* share theretofore distributed to said users from the public ditch. Practically, the defendant made itself a carrier of their water for the old users, and its liability in that connection to any such user was dependent on receiving water to be carried, from or for him. Whatever uncertainty may exist in the provisions of the contract of June, 1888, on this point is removed by the clear and explicit provision in the supplemental contract that none of said parties "shall . . . have any right under this agreement in excess of the amount of water furnished by such old user to the company." By the agreement, the old users expressly undertook "to deliver" to defendant, at the mouth of the ditch their *pro rata* share of the water, and defendant agreed

that "if the aforesaid water is delivered to them as aforesaid, . . . that they will carry and deliver" it, etc.   There was no obligation on the part of defendant to carry or deliver to any of the old users any water except that received for them, and certainly no obligation on its part to furnish to either of plaintiffs any of its own water acquired for its stockholders and for sale if there was a surplus over the amount required for the stockholders.

There can be no doubt as to the purpose of the compromise agreement, so far as the intent to exclude plaintiffs from any participation in the waters of the San Gabriel Cañon, except as to the 9.23 acres of Mrs. Gordon included in the water district described therein, is concerned.   This agreement purported to cover *all* the waters of such cañon, and to provide for their division in a specified way, to the exclusion of plaintiffs, except as to said 9.23 acres of Mrs. Gordon.   The old users joining in the execution thereof formally declared that the only acreage entitled to any old users' water was that described therein.   Plaintiffs had full notice of this claim and of the subsequent acts of the parties under it.

The agents of the parties provided for in such agreement, the committee of nine, at all times thereafter had actual possession of all the waters of the cañon for the purposes of distribution and delivery, and there was enough in the evidence to support the conclusion of the trial court that the only water permitted by said committee to flow to defendant for use by old users, except water for 1.6 acres of parcel "C," has been water for acreage included within the limits of the water district described in such agreement.   Whatever may have been the right of the Gordons as against those appropriating to their own use waters in fact belonging to them (the Gordons), if they so did, it would seem to necessarily follow that the Gordons did not deliver to defendant, either personally or by agents, old user water to be carried to their premises (except as to the 9.23 acres of parcel A and the 1.6 acres of parcel C), and that in the absence of such delivery, there is no liability on the part of defendant to deliver to them any of such old user water.   As we have seen, the only obligation of defendant under the contracts with plaintiffs was in respect to such old user water, and there was no obligation on its part to furnish any of its own water to them.   As

to the excess over 9.23 acres of Mrs. Gordon's land furnished with water from 1890 to 1902, between five and six acres, such water being furnished from the old user water and as water to which she was thought to be entitled under the compromise agreement, it may be that Mrs. Gordon acquired the right to have such supply continued, but we think it very clear that the other old users were necessary parties to the determination of that question, and that the defense of nonjoinder of necessary parties in that regard was properly sustained by the lower court. As already noted, the judgment expressly provided that it was without prejudice to the right of Mrs. Gordon to prosecute another action against the old users referred to in the answer and against the defendant as the distributer of their waters, and to assert and enforce such rights as she may have.

In view of what we have said, it is apparent that the complaint of appellants in regard to the conclusions of the trial court as to parcels "B" and "C," owned by Mr. Gordon, cannot be held well founded.

As to parcel "D," originally the Bower Tract, an altogether different question is presented. The sole claim of Mr. Gordon as to this land is based on the provisions of a deed dated September 10, 1883, executed by James G. Bower, the then owner of such tract, to defendant. By this instrument, Bower, for an expressed consideration of ten dollars, remised, released, and quitclaimed to defendant a right of way over the land of Bower in the N. ½ of the N. ½ of section 26, T. 1 N. R. 10 W., S. B. M. (which included this land), and on a line sufficiently described, for a water ditch of sufficient capacity to convey five thousand inches of water, the same to be so constructed as not to obstruct any roads of Bower, defendant to construct and maintain crossings over said ditch where necessary for Bower's use, and "said first party (Bower) to have the right to purchase and use the water of said ditch upon the same terms and conditions as the stockholders of said corporation." Defendant's ditch has been constructed along the line designated in the deed. Bower conveyed this tract of land to one J. S. Slauson, Slauson to Henry Martz on April 29, 1887, Martz to one George W. McKennon on January 9, 1900, and McKennon to plaintiff, John T. Gordon, on January 9, 1902. All of the deeds were

in the form of grant, bargain, and sale deeds, and conveyed the land "together with the tenements, hereditaments and appurtenances thereunto belonging or in any wise appertaining," but contain no special reference to any right to water from defendant. The trial court found upon sufficient evidence that no water was ever furnished for irrigation of said land, except that for two seasons, 1890 and 1891, water was delivered to a tenant in possession of said premises, but that the same was delivered to such tenant under and by virtue of stock of defendant company held by the tenant or his lessor, and was not delivered as water to which said land was entitled under the terms of said contract or any contract. It further found that neither the deed executed by Bower to the predecessor in interest of plaintiff, nor any of the mesne conveyances, contained any assignment or grant by Bower of any right held or claimed by Bower to take or use water from said ditch. It also found that only about five acres of said land are below the cement ditch or can be irrigated therefrom. It also found that plaintiff's claim as to this land was barred by the provisions of sections 318, 337, and 343 of the Code of Civil Procedure.

The question in this connection is as to the meaning and effect of the provision that Bower is to "have the right to purchase and use the water of said ditch upon the same terms and conditions as the stockholders of said corporation." The claim of Mr. Gordon is that this created a right appurtenant to the land of Bower over which the ditch was constructed, entitling the owner thereof to purchase and use thereon the waters of this ditch to the extent of the requirements of such land, upon the same terms and conditions as the stockholders of defendant. Defendant, on the other hand, claims that the right created was one personal to Bower, an easement in gross, and that such right did not pass by simple transfer of the land. So far as the record shows, as claimed by defendant, the water of defendant "is not made appurtenant to any land but is distributed to the shareholders in proportion to their stock, and . . . can be used and . . . is used by stockholders upon any land that they may choose, either their own, or upon sale by them to other landowners." Section 2 of article XI of its by-laws is as follows: "All water developed or acquired by this company shall be divided *pro rata* in proportion to

the amount of stock they severally hold amongst the stockholders, provided that if there be a surplus not needed for the stockholders' use, it may be sold for the benefit of the company.''

In the light of the facts as to the rights of stockholders of defendant corporation in regard to the water of the company, it is apparent that the provision relied on is very uncertain and indefinite in its terms. The intent to limit the effect of the provision to any particular land is by no means clear. The land in fact owned by Bower in the one hundred and sixty acres constituting the N. ½ of the N. ½ of section 26, T. 1 N. R. 10 W., S. B. M., is not described in the deed, and the ''right to purchase and use the water of said ditch'' is not, in terms, limited to the land owned by him or to any other particular land. The only prescribed limitation on the right is expressed in the words ''upon the same terms and conditions as the stockholders of said corporation.'' The right is given simply to the ''said first party'' (James G. Bower). According to the evidence, the right of a stockholder to use water is not appurtenant to any land, but he may change his place of use as he sees fit. According to findings sufficiently supported by the evidence there has been no practical construction by any of the parties in favor of the theory that it was intended to make this right appurtenant to the land. In fact, under such findings, the only practical construction shown was opposed to such theory. For nearly twenty years no one apparently claimed the right to water under this contract, and in the two seasons in which water was furnished for use on this land, it was demanded and received upon stock of the company. In view of all the circumstances, we are of the opinion that the trial court was warranted in concluding, despite the presumption that an easement is to be deemed appurtenant to some other estate whenever it can fairly be construed as such, rather than one in gross, that the right created was one personal to Bower and not an appurtenance to any particular land. If this be true, it admittedly follows that there has been no assignment of the right and that Mr. Gordon acquired no interest therein by reason of the conveyance of the land to him in the year 1902, which was the year when the dispute commenced between plaintiff and defendant as to water-rights. We appreciate the force of the argument

of learned counsel for Mr. Gordon to the effect that treating the provision as one personal to Bower and placing him in the exact position of a stockholder of defendant, by reason of the fact that he did not own any stock there would be no way of determining the proportion of water which he was entitled to purchase. But assuming that no measure of his right in this regard can be found in the deed, we do not think that such fact alone would compel the construction sought by plaintiffs to be given to this provision. It may be that the provision construed as it was by the lower court would be void for uncertainty, and still remain that no other construction might fairly be given to it. But it is suggested by counsel for defendant, that, construing the provision as one personal to Bower, it might reasonably be held that there was a limitation on the amount of water he might purchase, and that he could take only such *amount* as would suffice to irrigate such of his land as lay below the ditch, with the right to make such use of the same as he saw fit. However, it is not necessary to determine as to this.

The judgments and orders appealed from are affirmed.

Sloss, J., Lorigan, J., Melvin, J., and Henshaw, J., concurred.

Mr. Justice Shaw did not participate herein.