Filed 3/23/26  Beecham v. City of Azusa CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| PATRICIA BEECHAM, as Personal Representative, etc., <br><br>     Plaintiff and Appellant, <br><br>     v. <br><br> CITY OF AZUSA et al., <br><br>     Defendants and Appellants, <br><br> COVINA IRRIGATING COMPANY et al., <br><br>     Defendants and Respondents. <br><br> . | B333843 <br><br> (Los Angeles County Super. Ct. No. BC623542) |

APPEALS from a judgment and orders of the Superior Court of Los Angeles County, Kevin C. Brazile and Teresa A. Beaudet, Judges.  Affirmed in part and reversed in part with directions.

Marlene Thomason for Plaintiff and Appellant.

Best Best & Krieger and Gregg W. Kettles for Defendants and Appellants City of Azusa and Azusa Valley Water Company.

Best Best & Krieger, Christopher M. Pisano, Dana Lui and Gregg W. Kettles for Defendants and Respondents City of Azusa, Azusa Valley Water Company, Covina Irrigating Company, and San Gabriel River Water Committee.

Tyson & Mendes, David M. Frishman and Brooke Y. Park for Defendant and Respondent San Gabriel River Water Committee.

_____

## INTRODUCTION

This is the second appeal in an action by Praxedes E. Running, individually and as trustee of the Praxedes E. Running Trust, against the City of Azusa and Azusa Valley Water Company (collectively, the City), Covina Irrigating Company (CICO), and San Gabriel River Water Committee (the Committee). Running died during the litigation, and her daughter Patricia Beecham substituted into the case as Running's personal representative and as successor cotrustee. For consistency with the opinion in the first appeal and for clarity, we refer to the plaintiff as Running.[1]

Running's third amended complaint alleged causes of action against each defendant for breach of contract, breach of the implied covenant of good faith and fair dealing, financial elder abuse, and various torts. Running alleged each defendant,

---

[1] Where necessary to refer specifically to Praxedes Running as an individual, we call her Praxedes.

acting in concert with and as an agent of the others, breached its obligations under a 1920 contract by, among other things, diverting water belonging to Running and trespassing on her property. Running alleged that, as a result of this wrongful conduct, she suffered damages, including for the loss of mature trees on her property that died from lack of water.

In the first appeal we reversed the judgment in favor of the City, holding the City failed to meet its burden on summary judgment on Running's causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and financial elder abuse. (*Running v. City of Azusa* (Aug. 3, 2020, B293638) [nonpub. opn.] (*Running I*).) After several nonsuits and a jury trial, Running appeals from (1) judgment for the City and the Committee following an order granting nonsuit; (2) judgment in her favor following (a) an order granting motions by CICO and the Committee for summary adjudication on some of Running's causes of action (breach of contract, breach of the implied covenant of good faith and fair dealing, financial elder abuse, and certain tort causes of action), and (b) certain rulings concerning her cause of action for negligence against CICO; and (3) an order and amended judgment awarding costs to the City and the Committee. The City appeals from a postjudgment order denying its motion for attorneys' fees.

We affirm the judgment for the City, the postjudgment order awarding the City its costs, and the postjudgment order denying the City's motion for attorneys' fees. Regarding CICO and the Committee, we reverse the judgment on Running's causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud. We also

reverse the postjudgment order awarding the Committee its costs. In all other respects we affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *The Running Property and the Parties*

We summarized the history of Running's property and prior litigation affecting her rights relating to the property in *Running I*. As relevant to this appeal, a grant deed recorded in 1963 shows Running and her husband purchased a three-acre property in Azusa.[2] The property had once been part of a 133-acre property owned by J.T. and Emma Gordon, and the Runnings were successors-in-interest to the Gordons with respect to the Runnings' portion of the Gordon property.

The City is the controlling shareholder of Azusa Valley Water Company (AVWC), a California corporation operating as a publicly regulated water company. The City and AVWC are members of the Committee, a nonprofit unincorporated association established to manage the water rights of users of San Gabriel River water. (*Running I*, *supra*, B293638.) Running alleged the City and AVWC are alter egos, neither the City nor AVWC challenged that allegation, and we observed in *Running I* they are "one and the same." (*Ibid.*) We treat them so in this appeal.

---

[2] Running alleged in her complaint she and her husband bought the property in 1950, but the grant deed attached to the complaint is dated 1963. In a later pleading Running stated she purchased the land in 1963, and her daughter testified her parents "got the deed in 1963." The precise date the Runnings bought the property is not relevant to this appeal.

4

CICO (originally called the Azusa Water Development & Irrigation Company) is a private mutual water company organized in the 1880's that distributes water among its stockholders. (*Gordon v. Covina Irrigating Co.* (1912) 164 Cal. 88, 89-90 (*Gordon*); see *Running I*, *supra*, B293638.) Running owns three shares of CICO stock. In 1885 or 1886 CICO built a cement ditch or canal and an underground tunnel to transport water from the San Gabriel River, and property owners including the Gordons granted CICO an easement for the canal and tunnel, in exchange for certain rights to use the water that flowed through it.

As explained in *Running I*, in 1888 CICO and 70 to 80 farmers on the east side of the San Gabriel River known as "old users," including the Gordons, "entered into the Old User Agreement, which recited the rights of each old user to his or her pro rata share of the water that flowed in the canal. Under that agreement the old users agreed to deliver to the mouth of CICO's canal their pro rata share of water. CICO agreed for a fee to 'receive at the mouth of its water [canal]' all the water belonging to the old users and permit that water to flow through its canal to the old users' lands. [Citation.] The agreement acknowledged the water delivered by CICO through the canal 'belong[ed] in whole' to the old users as 'appurtenant to said lands.'" (*Running I*, *supra*, B293638; see *Gordon*, *supra*, 164 Cal. at pp. 90-91.)

In 1889 CICO and many of the old users (not including the Gordons) entered into an agreement that "designated the place from which each of the parties could take water belonging to them and required payment to CICO relating to each old user's proportional expenses." (*Running I*, *supra*, B293638.) That

5

agreement, called the Compromise Agreement, also created the Committee (originally called the Committee of Nine). (*Gordon, supra*, 164 Cal. at pp. 92-93.) Members of the Committee included CICO and the City's predecessor-in-interest. From then on the Committee represented the parties to the Compromise Agreement and had "full charge [of the water] from the source of supply to the point of division" with certain users. (*Id.* at p. 93; see *Running I, supra*, B293638.)

        B.     *Running Obtains Water Rights from a Settlement Agreement Between the Gordons, CICO, and Members of the Committee*

"In 1905 the Gordons sued CICO, alleging CICO was obligated under the Compromise Agreement to supply them with water in excess of the amount they were otherwise entitled to under the Old User Agreement. Observing that the Gordons were not parties to the Compromise Agreement, the Supreme Court held they had no standing to enforce it. However, the Court recognized that conclusion also meant the Gordons' rights under the Old User Agreement could not be affected by the Compromise Agreement. [Citation.] The Court further explained that CICO's obligation to the Gordons under the Old User Agreement was merely to receive at its canal and deliver, for a fee, the Gordons' pro rata share of old user river water. It remained the obligation of the Gordons, as old users, to ensure that water was delivered to CICO's canal and to pay CICO for its delivery of water from that canal to their land. The Court held there was no obligation for CICO to provide any of its own water to the Gordons." (*Running I, supra*, B293638; see *Gordon, supra*, 164 Cal. at pp. 95-97.)

6

"Nearly a decade after the Supreme Court's decision in *Gordon*, CICO and other members of [the Committee] filed a complaint in superior court seeking to enjoin the Gordons from taking more than their allotted amount of water from the canal and from interfering with CICO's easement on their properties to maintain the canal." (*Running I*, *supra*, B293638.) The parties settled the litigation in 1920 by entering into the Indenture, which was recorded and referred to in Running's grant deed. (*Ibid*.) In general, the Indenture created an easement for the members of the Committee (referred to as "second parties") to operate and maintain the canal on the Gordons' property and specified the amount of water and its "manner of taking" for the Gordons' domestic and irrigation purposes. The parties to the Indenture agreed that the water rights "described [t]herein" were the "only water rights" the Gordons had to the water in the canal or to the waters of the San Gabriel River and that the "terms, covenants and provisions" of the Indenture "shall inure to the benefit of and bind . . . successors and assigns of the parties [t]hereto and shall run with the land . . . ."

Regarding the easement, the Indenture established the "right of the second parties to maintain, repair, operate and conduct water through the open cement ditch and tunnel across the [Gordons'] real property . . . is hereby admitted and acknowledged by" the Gordons. The second parties agreed to "go only along" one of three routes on the Gordon property when "cleaning, repairing or maintaining" the canal.

Regarding the Gordons' water rights, the Indenture set out separate rights for "domestic" and "irrigating" water across four parcels of the Gordons' land. Running's property includes parts of parcels three and four and comprises approximately 23 percent

7

of the land area of those two parcels (and 2.26 percent of the entire former Gordon property).  For domestic water the Indenture allocated 200,000 cubic feet of water annually "to be taken" only at certain times of the year.  The Indenture stated the water "shall be delivered" to the Gordons from the canal through up to three metered apertures in specified locations.  (The parties contest whether any such apertures are on Running's portion of the Gordon property.)  The Indenture further provided the Committee's members shall bear the "cost of installing the openings, meters and appliances for delivering" water to those apertures and "shall install the same and thereafter maintain them at their own cost and expense."

For irrigation water the Indenture identified certain portals for irrigating each parcel of the Gordon property.  Regarding the amount of irrigation water, the Indenture stated the Gordons "have the right appurtenant to parcel three . . . to receive and use for irrigating purposes from said ditch upon the southerly three acres of said parcel, water at the rate of 1 inch to 8 acres measured under four inch pressure . . . ."  The parties contest whether Running's property includes any of the southerly three acres of parcel three.

The Gordons agreed the water rights described in the Indenture "are the only water rights of the [Gordons], or any of them, in and to the waters in said ditch, or any part thereof, or in and to the waters of the San Gabriel River for use upon any land herein above described through which said ditch runs, which they or any of them own or claim or in which they or any of them have any interest, and [the Gordons] do hereby remise, release and quitclaim unto the second parties all rights to water in said ditch, and all rights to water in said river for use upon lands

hereinabove described as belonging to them; PROVIDED, of course, that this shall not be deemed to include any waters of [CICO] to delivery of which [the Gordons] may be entitled by reason of their ownership of stock in said company . . . ."

C. *CICO Diverts Water from the Canal, and Running (Through Beecham) Files This Action*

Running lived in a house built above the water tunnel until 2009, when she moved to Yuba County to live closer to Beecham. At the time, Running suffered from dementia, and she signed a general power of attorney in favor of Beecham. Running's son, Steve Running, moved into Running's house around the same time his mother left. Steve testified he took a lot of medication and had trouble remembering events and information.

CICO's 2005-2006 Annual Report announced its decision to take the portion of the canal that runs through the properties of Running and her neighbors out of service and replace it with a new, underground pipeline. According to CICO's President and Chief Executive Officer David DeJesus, CICO made that decision "predominantly" for health and safety reasons and to maintain the purity of the water. Also according to DeJesus, CICO gave notice of the canal's closure and the plan to divert water to the new pipeline to CICO's shareholders, including Running, through CICO's annual reports for the years 2005 to 2010. CICO's operations manager Matthew Kuns testified CICO mailed the annual reports to Running's address in Azusa until 2017, when CICO received a request to change her address. Between 2005 and 2017 Running exchanged documents by mail with CICO to lease her three shares of CICO stock back to CICO in exchange for monetary compensation. Instead of receiving water from

CICO, she received and paid for water from the City's public works system.

In 2010 CICO diverted the water from the canal to the new underground pipeline. In 2011 CICO paid some of Running's neighbors for "quitclaims" of the easements to their properties. At that time CICO did not offer to buy back the easement to Running's property (though it eventually did in 2015).

According to Beecham, neither she nor her mother received notice CICO intended to divert water from the canal. In September 2010, however, Steve signed a neighborhood petition demanding CICO clean and repair the abandoned canal, and he testified he knew no water ran through the canal at that time. Steve also lived on the property from 2009 until at least 2015 and occasionally forwarded Running's mail to Beecham.

Kuns testified CICO maintained the portion of the canal that traversed Running's property until 2015 or 2016, but Running contends CICO stopped maintaining the canal in late 2013. Kuns stated that around this time Beecham placed a lock on a gate to the Running property, and CICO had to request permission to access the property to perform maintenance. According to Kuns and emails admitted at trial, Beecham did not respond promptly or at all to CICO's requests for access.

After CICO took the canal out of service, approximately 20 large trees on Running's property died, apparently from the lack of water seeping into the soil through cracks in the canal. In 2015 the City posted a notice of hearing for abatement of a nuisance—including "downed and dead trees throughout the property"—and warned failure to remediate the nuisance could result in a lien for the amount of the anticipated cleanup costs. Beecham did not contest the notice and paid more than $100,000

10

to have the dead trees and other vegetation removed.  Beecham claims that, during the cleanup, she discovered that the water in the canal had been diverted to the new pipeline and that someone sealed the southern end of the tunnel on Running's property with cement.  (The northern end is located on someone else's property.)

Also in 2015 Beecham, through counsel, asked CICO to provide water to Running's property under the terms of the Indenture and to commission an inspection of and make recommendations to remediate the tunnel and the land around the cracked and broken cement canal.  Beecham also alleged CICO unlawfully "permitted the construction" of a neighbor's sewer and gas line on its easement on Running's property.  CICO responded by offering to allocate water corresponding to Running's three shares of stock, so long as Running paid for the work required to deliver the water to her, as required by CICO's bylaws.

In 2016 Beecham filed this action alleging authority under a power of attorney for Praxedes as an individual and as trustee of the Praxedes E. Running Trust.  The operative third amended complaint included causes of action against the City, CICO, and the Committee for financial elder abuse (Welf. & Inst. Code, § 15610 et seq.), destruction of timber (Civ. Code, § 3346), intentional and negligent infliction of emotional distress, negligence, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud,[3] conversion, unjust

---

[3]     Running alleged her fraud cause of action against CICO, the Committee, and AVWC, but not against the City.

11

enrichment, and trespass.[4] The trial court sustained the City's demurrer under the Government Claims Act (Gov. Code, § 815) to all the tort causes of action except the cause of action for elder abuse. We affirmed that ruling in *Running I*. (*Running I, supra*, B293638.)

D. *The Trial Court Grants in Part the Defendants'*
*Motions for Summary Judgment and Summary*
*Adjudication; We Reverse the Judgment for the City*

Each of the defendants filed a motion for summary judgment or in the alternative for summary adjudication, supported by a joint memorandum of points and authorities. The trial court granted the City's motion for summary judgment, which disposed of Running's causes of action against the City for elder abuse, breach of contract, and breach of the implied covenant of good faith and fair dealing. The trial court denied the motions by CICO and the Committee for summary judgment, but granted their motions for summary adjudication on Running's causes of action for elder abuse, destruction of timber, intentional and negligent infliction of emotional distress, breach of contract, breach of the implied covenant of good faith and fair dealing, fraud, conversion, and unjust enrichment, and denied their motions for summary adjudication on Running's cause of action for trespass. The court granted the Committee's motion for summary adjudication on Running's negligence cause of action, but denied CICO's motion for summary adjudication on that cause of action. In *Running I* we reversed the judgment for

---

[4]     Running also alleged some of these and other causes of action against individual defendants who are no longer parties to this action. (See *Running I, supra*, B293638.)

12

the City, concluding there were triable issues of material fact on Running's causes of action for elder abuse, breach of contract, and breach of the implied covenant of good faith and fair dealing.

> E. *The Trial Court Denies a Motion for Judgment on the Pleadings and Grants Certain Motions for Nonsuit, and the Jury Finds CICO Liable for Negligence*

Following discovery, CICO and the Committee filed a motion for judgment on the pleadings, arguing Beecham and her mother lacked capacity to maintain this action. The trial court denied the motion.

The trial court conducted a four-week jury trial on Running's causes of action against the City, her cause of action for trespass against CICO and the Committee, and her cause of action for negligence against CICO. At the close of Running's case-in-chief the court granted the City's motion for nonsuit on all causes of action against it. The court also granted motions by CICO and the Committee for nonsuit on Running's trespass cause of action. The court denied CICO's motion for nonsuit on Running's negligence cause of action, but the court made certain rulings that effectively narrowed the scope of her negligence cause of action. Running requested a statement of decision on the court's orders granting the motions for nonsuit and limiting the scope of her negligence cause of action, which the court denied.[5]

---

[5] Running argues the trial court erred in refusing to provide a statement of decision. "A statement of decision may be required on a motion ruling where the motion was in the nature of a 'trial' of fact issues." (*City of San Diego v. Rancho Penasquitos Partnership* (2003) 105 Cal.App.4th 1013, 1044; see

13

The jury found CICO negligent in "the maintenance and/or repair of the canal" between June 2013 and June 2016 and awarded Running $90,000 "to put the canal . . . in a similar condition as the other property owners along the canal south of [Running's] property."  The jury also found Running was negligent and assigned her 10 percent of responsibility for the harm caused to her property.  The court entered judgment on November 21, 2023.  The court entered an amended judgment on May 7, 2024 that awarded the City and the Committee their costs against Running and that awarded Running her costs against CICO.

F.   *Running Appeals from the Judgment; The Trial Court Denies the City's Motion for Attorneys' Fees, and the City Timely Appeals*

Running timely appealed from the judgment, challenging, among other things, the trial court's orders granting the motions by the City and the Committee for nonsuit and granting in part the motions by CICO and the Committee for summary adjudication.  She also timely appealed from the amended judgment that included the cost award to the City and the Committee.  We consolidated the appeals.

---

Code Civ. Proc., § 632; *In re Marriage of Fong* (2011) 193 Cal.App.4th 278, 294.)  But when the trial court decides a question of law, such as on a motion for nonsuit (*Nally v. Grace Community Church* (1988) 47 Cal.3d 278, 291; *Applied Medical Distribution Corp. v. Jarrells* (2024) 100 Cal.App.5th 556), a statement of decision is not required.  (*City of San Diego*, at p. 1045; *Southern Cal. Gas Co. v. City of Vernon* (1995) 41 Cal.App.4th 209, 220-221.)

After the court granted the City's motion for nonsuit and before the entry of judgment in November 2023, the City moved for additional costs and attorneys' fees under Code of Civil Procedure sections 1038 and 2033.420.[6]  The trial court denied that motion, and the City timely appealed from that order.  We consolidated this appeal with the other appeals.

## DISCUSSION

A.    *Running Has Not Shown the Trial Court Erred in Granting the City's Motion for Nonsuit*

1.    *Applicable Law and Standard of Review*

"'A motion for nonsuit is a procedural device which allows a defendant to challenge the sufficiency of plaintiff's evidence to submit the case to the jury.  [Citation.]  Because a grant of the motion serves to take a case from the jury's consideration, courts traditionally have taken a very restrictive view of the circumstances under which nonsuit is proper.'  [Citation.]  Motions for nonsuit are granted 'only under very limited circumstances.'  [Citation.]  The case must go to the jury if there are any doubts." (*Medina v. St. George Auto Sales, Inc.* (2024) 103 Cal.App.5th 1194, 1208; see *Campbell v. General Motors Corp.* (1982) 32 Cal.3d 112, 117-118.)

"A motion for nonsuit 'should state the precise grounds on which it is made, with the defects in the plaintiff's case clearly and particularly indicated.  This gives the plaintiff an opportunity to cure the defect by introducing additional

---

[6]    Undesignated statutory references are to the Code of Civil Procedure.

15

evidence.' . . . '[D]efects not specifically pointed out by the moving party cannot be considered by the trial court, or by [the appellate court], in determining the merits of the motion.'" (*Medina v. St. George Auto Sales, Inc.*, *supra*, 103 Cal.App.5th at p. 1208; see *Alpert v. Villa Romano Homeowners Assn.* (2000) 81 Cal.App.4th 1320, 1328, fn. 8.)

"'A defendant is entitled to a nonsuit if the trial court determines the evidence presented by plaintiff is insufficient to permit a jury to find in his or her favor as a matter of law.'" (*Medina v. St. George Auto Sales, Inc.*, *supra*, 103 Cal.App.5th at pp. 1208-1209; see *IIG Wireless, Inc. v. Yi* (2018) 22 Cal.App.5th 630, 650.) We review an order granting a motion for nonsuit de novo. (*Jimenez v. Hayes Apartment Homes, LLC* (2025) 115 Cal.App.5th 1072, 1083; *Medina*, at p. 1209.) "In evaluating whether [the plaintiff's] evidence would support a jury verdict in [her] favor, we review the record for substantial evidence. Evidence is substantial if it is reasonable, credible, and of solid value. [Citation.] 'The appellate court evaluates the evidence in the light most favorable to the plaintiff.' [Citation.] This means "'the evidence most favorable to plaintiff must be accepted as true and conflicting evidence must be disregarded.'"" (*Jimenez*, at p. 1083; see *Medina,* at pp. 1208-1209.)

> 2. *Running Forfeited Her Argument, Made for the First Time in Her Reply Brief, the Indenture Is Not Void as Against Public Policy*

Running alleged the City breached its promises under the Indenture and its duty of good faith and fair dealing by failing to maintain the canal and diverting water allocated to her. The City moved for nonsuit and argued the Indenture did not require

16

the City to maintain the canal, deliver water to the canal, or keep the canal "open and flowing with water on [Running's] property." The City also argued the Indenture "is void for being contrary to public policy" because Running's interpretation of the Indenture would require the City to keep the canal open for Running's sole use and benefit, even when "the canal no longer serves a public benefit, and in fact poses a public health and safety risk." The City further argued Running's demand for "free [water] in perpetuity" would "constitute a gift of public funds" that would "force the continued operation of an unsafe water transmission line." In her opposition to the City's motion for nonsuit Running did not respond to this argument.

Before the hearing on the City's motion for nonsuit, the trial court announced its tentative decision to grant the City's motion on the grounds that the Indenture required CICO and not the City to maintain the canal and that CICO diverted water from the canal for "legitimate public health and safety reasons." The court also stated its tentative ruling that nothing in the Indenture prevented CICO from diverting the water for those reasons and that the Indenture was silent about diversion. During the hearing that followed, counsel for the City argued there were additional grounds for granting its motion, and the court stated: "There are other grounds, and I looked at those. . . . There was some evidence about a request that [Running] be allowed to hook up into the underground pipeline and have water for free. And that would be a gift of public funds. . . . I'll say this now, and give [Running] a chance to address. . . . As to the City, you cannot have free water." The court further stated that, because "a gift of public funds" would "void any agreement," even if the City had agreed to provide Running water for free in

17

perpetuity, such an agreement "would be void. So I make that finding." After counsel for other defendants addressed their motions for nonsuit, counsel for Running did not make any argument in response to the City's motion for nonsuit on Running's contract causes of action, and the trial court adopted its tentative ruling.

In her opening brief Running does not argue the trial court erred in granting nonsuit on the ground the Indenture was void as contrary to public policy. In its respondent's brief the City again argues that Running's interpretation of the Indenture would require the City to "forever" supply water to Running at no cost, which would result in an unconstitutional use of public funds (see Cal. Const., art. XVI, § 6) and that Running forfeited any argument to the contrary she might make for the first time in her reply brief. As the City had anticipated, Running argues in her reply brief that the City cited no evidence supporting its contention water "would be 'gifted' to her 'from public funds'" and that the trial court "made no such finding."[7] Citing authority for the proposition that reciprocal obligations are not "gifts," Running also argues the "Indenture is a bargained-for exchange granting perpetual easements to Defendants in return for Running's perpetual easement to receive water on her land without charge."

---

[7] We interpret Running's argument the trial court "made no such finding" to mean the trial court did not find public funds would be used to supply water to Running. As stated, the trial court made an express ruling Running's claim to free water in perpetuity constituted an unconstitutional gift. We also observe Running's argument appears to contradict her allegation the City is jointly and severally liable for her damages.

18

Running may be correct on the law. Article XVI, section 6 of the California Constitution states the Legislature (including political subdivisions of the state)[8] has no power "to make any gift or authorize the making of any gift, of any public money or thing of value to any individual, municipal or other corporation . . . ." A "gift" excludes "'expenditures of public funds or property which involve a benefit to private persons . . . for a public purpose.'" (*Preston v. State Bd. of Equalization* (2001) 25 Cal.4th 197, 225, italics omitted; see *County of Alameda v. Janssen* (1940) 16 Cal.2d 276, 281-282.) The term "gift" otherwise includes ""'all appropriations of public money for which there is no authority *or enforceable claim*,'" or which are grounded on mere moral or equitable obligations." (*West Contra Costa Unified School Dist. v. Superior Court* (2024) 103 Cal.App.5th 1243, 1256, italics added; see *Conlin v. Board of Supervisors* (1893) 99 Cal. 17, 21-22.) A claim is enforceable under a contract with a public entity where "consideration given in exchange [is] 'adequate,' so as to evidence a bona fide contract." (*Winkelman v. City of Tiburon* (1973) 32 Cal.App.3d 834, 845; see *Property California SCJLW One Corp. v. Leamy* (2018) 25 Cal.App.5th 1155, 1166, fn. 6 [expenditure of public funds is an unconstitutional gift where the public entity's "motive does not rest upon a valid consideration"].) Thus, a public entity's appropriation of money or property violates the gift clause when the appropriation is for a private purpose unsupported by adequate consideration. (See *Besig v. Friend* (N.D.Cal. 1979) 463 F.Supp. 1053, 1063 [interpreting the California Constitution and holding a "transfer of property by the

---

8       Article XVI, section 6 generally applies to political subdivisions of the state, including cities. (See *City of Industry v. City of Fillmore* (2011) 198 Cal.App.4th 191, 208.)

state is not a 'gift' . . . if the transfer is supported by adequate consideration or if the transfer serves a valid public purpose"].)

Running may have an enforceable claim against the City based on the Indenture, and she argues in her reply brief her water rights were "bargained-for."  But Running did not make that argument in the trial court or in her opening brief on appeal. And her failure to do so (twice) deprived the City of the opportunity to argue the factual issue whether Running's consideration ( = the easement for operating and maintaining the canal) was adequate to support her claim to free water in perpetuity.  (See *In re Estate of Thomson* (1913) 165 Cal. 290, 296 ["whether or not there is a sufficient consideration to support a contract is always a question of fact"]; *D.E. Sanford Co. of San Francisco v. Cory Glass Coffee Brewer Co.* (1948) 85 Cal.App.2d 724, 730 [same]; see also *Pacific Gas & Electric Co. v. Hacienda Mobile Home Park* (1975) 45 Cal.App.3d 519, 530 ["Adequacy of consideration is a question of fact to be determined by the trier of fact."]; *Estate of Foreman* (1969) 269 Cal.App.2d 180, 189 ["'[f]airness and adequacy of consideration are peculiarly questions of fact to be determined in the light of all the circumstances'"].)  As a result, Running forfeited the argument. (See *Sandton Agriculture Investments III, LLC v. 4-S Ranch Partners, LLC* (2025) 113 Cal.App.5th 519, 533 (*Sandton*) [failure to discuss an issue in the appellant's opening brief forfeits the issue on appeal]; see also *People v. Stowell* (2003) 31 Cal.4th 1107, 1114 ["It is both unfair and inefficient to permit a claim of error on appeal that, if timely brought to the attention of the trial court, could have been easily corrected or avoided."]; *Shaw v. County of Santa Cruz* (2008) 170 Cal.App.4th 229, 285-286 [same].)  Because Running forfeited the argument challenging

20

one of the trial court's bases for granting the City's motion for nonsuit on her causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing, we affirm the judgment for the City on those causes of action.[9]

B. *Running Has Not Shown the Trial Court Erred in Granting the City's Motion for Nonsuit on Her Cause of Action for Financial Elder Abuse*

1. *Applicable Law*

The Elder Abuse and Dependent Adult Civil Protection Act (Welf. & Inst. Code, § 15610 et seq.) (Elder Abuse Act) defines an "elder" as "any person residing in this state, 65 years of age or older." (*Id.*, § 15610.27.) There is no dispute Running was over 65 years old and lived in California. The Elder Abuse Act provides that "financial elder abuse" occurs when "'a person or entity "[t]akes, secretes, appropriates, obtains, or retains real or personal property[10] of an elder or dependent adult for a wrongful use or with intent to defraud."'" (*Cameron v. Las Orchidias Properties, LLC* (2022) 82 Cal.App.5th 481, 507; see Welf. & Inst. Code, § 15610.30, subd. (a)(1).) A person or entity can also commit financial elder abuse by assisting another in any of those acts. (Welf. & Inst. Code, § 15610.30, subd. (a)(2).) A "'person or

---

9 Because we affirm judgment for the City on the public policy ground we need not consider Running's argument the trial court erred in denying her motion for summary adjudication on the causes of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

10 Including any "property right." (Welf. & Inst. Code, § 15610.30, subd. (c).)

21

entity is "deemed to have taken, secreted, appropriated, obtained, or retained property for a wrongful use if, among other things, the person or entity takes, secretes, appropriates, obtains, or retains possession of property and the person or entity knew or should have known that this conduct is likely to be harmful to the elder . . . adult.'" [Citation.] A plaintiff is not required to prove bad faith or fraud to prevail on a claim of financial elder abuse." (*Cameron*, at p. 507; see Welf. & Inst. Code, § 15610.30, subd. (b).)

Where the plaintiff alleges financial elder abuse occurred by breach of contract, the plaintiff must show "the party who violates the contract actually knows that it is engaging in a harmful breach, or reasonably should be aware of the harmful breach." (*Paslay v. State Farm General Ins. Co.* (2016) 248 Cal.App.4th 639, 658; see *id.* at p. 658, fn. 15 ["the legislative history [of Welfare & Institutions Code section 15610.30] does not demonstrate an intent to deem mere breaches of contract actionable instances of elder abuse"]; Dudensing, Cal. Practice Guide: Elder Abuse Litigation (The Rutter Group 2025) ¶ 13:3 [same].) Where the plaintiff alleges a public entity committed elder abuse, the plaintiff must show the entity's employees or agents engaged in acts of elder abuse. (See *Marron v. Superior Court* (2003) 108 Cal.App.4th 1049, 1067 [a public entity "can act only through its employees or agents," and it "is implied that the acts [of dependent adult abuse] alleged in the complaint were done by [the entity's] employees or agents"]; see also Gov. Code, § 815.2, subd. (a) [a "public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action

22

against that employee or his personal representative"]; *Koussaya v. City of Stockton* (2020) 54 Cal.App.5th 909, 945 ["in order for vicarious public entity liability to attach, a public employee, either named as a defendant or at least 'specifically identified' by the plaintiff, must have engaged in an act or omission giving rise to that employee's tort liability"].)

Where the plaintiff alleges an entity assisted another in committing elder abuse, the plaintiff must show the entity had actual knowledge (1) the third party's conduct was wrongful and (2) was likely to harm the elder. (See *Das v. Bank of America, N.A.* (2010) 186 Cal.App.4th 727, 745 [plaintiff failed to allege a bank assisted a customer in committing financial elder abuse where the plaintiff did not allege the bank had actual knowledge its conduct assisted a third party in committing that tort].)

### 2. *Running Has Not Shown She Introduced Substantial Evidence of Financial Elder Abuse*

Running alleged the City (and all defendants) committed financial elder abuse by taking and diverting her water, sealing the tunnel without reinforcing it, failing to maintain the canal and tunnel, and issuing the notice of abatement resulting in cleanup costs, all of which she alleged breached their duties under the Indenture. She did not specifically allege the City assisted any other defendant in committing financial elder abuse, but she generally alleged the defendants acted in concert and were agents of each other and vicariously liable for the others' actions. We assume this was sufficient to allege the City "assist[ed]" other defendants in committing financial elder abuse. (See Welf. & Inst. Code, § 15610.30, subd. (a)(2).)

23

In its motion for nonsuit, the City argued Running failed to introduce or identify any evidence a City employee committed financial elder abuse or assisted another person or entity in committing such abuse. The City also argued Running failed to introduce evidence a City employee had knowledge the City or any other defendant engaged in a harmful breach of any agreement (or any other conduct constituting financial elder abuse). According to the City, the only City employees who testified at trial were Brent Hale (a City community improvement inspector) and Rick McMinn (the City community improvement manager), and they were involved only in the abatement notice the City posted regarding the dead trees and vegetation on Running's property. The City contended there was "no testimony that these City employees even knew who Ms. Running was, or that she was an elder."

In her opposition to the motion for nonsuit Running argued the City, as a member of the Committee, aided CICO in taking her water, tunnel, and water rights as "a carefully coordinated plan to divert her water permanently to the new underground pipeline owned by [the City]." Thus, she argued, "if [CICO] breached the Indenture of 1920 and [the City] aided [CICO], that is sufficient for liability." But Running did not identify a City employee who aided CICO in breaching the Indenture, and she cites no evidence admitted at trial to support her contentions. The trial court granted the City's motion for nonsuit on Running's cause of action for elder abuse because, among other reasons, there was "no evidence of wrongful conduct, fraud, or undue influence by the City or any of its employees." The trial court also ruled posting the abatement notice was not a "taking" of property under the Elder Abuse Act.

Running first argues our opinion in *Running I* held she need not establish "vicarious employee, agency or independent contractor liability."  *Running I*, however, did not address any form of vicarious liability.  It held that Running's financial elder abuse cause of action failed because "Running had no contractual right to water that had flowed through the canal" and because the City's manager and assistant director of utilities stated "they had never met Running and had no knowledge of her age or mental infirmity."  (*Running I*, *supra*, B293638.)  Running also argues a public entity may be held "directly liable if it commits acts prohibited by statute" without showing any employee committed such acts.  Running cites three cases for that proposition, none of which supports it.[11]

Running next argues there was substantial evidence the City committed financial elder abuse because "Defendants planned and participated together to sever Running's water line, knowing it would harm her," but she cites no evidence to support that contention.  She also argues the City was a member of the Committee when her water was diverted (which the City does not contest), but again she cites no evidence any City employee knew or should have known the City breached or assisted the Committee in breaching the Indenture in a way that was likely to harm her.  She contends that Hale and McMinn told Beecham

---

[11]     See *Hunter v. Bryant* (1991) 502 U.S. 224, 228-229 (Secret Service agents were entitled to qualified immunity for arresting the plaintiff); *Miklosy v. Regents of University of California* (2008) 44 Cal.4th 876, 900 (an individual employee of the Regents cannot be personally liable for wrongful discharge); *Townsend v. State of California* (1987) 191 Cal.App.3d 1530, 1533 (a state university cannot be liable for the tortious actions of a non-employee).

25

that she had to clear the canal and that Hale and CICO refused Beecham's requests they do the clearing, but Running does not explain how those actions amounted to elder abuse or point to any evidence Hale, McMinn, or any employee of CICO knew or should have known their actions or inactions breached the Indenture and were likely to harm Running. Running also argues for the first time in her reply brief Don Berry, the administrator and only employee of the Committee, is the City's "W2'd employee," but she cites no evidence for that contention either. In any event, Running does not argue or cite any evidence Berry knew or should have known his or any of the defendants' actions breached the Indenture and were likely to cause Running harm.[12]

C.     *Beecham Cured Any Deficiency in Her Capacity To Sue on Behalf of Her Mother and the Running Trust*

1.     *Additional Procedural Background*

Praxedes filed this action on June 13, 2016, individually and as trustee of the Praxedes E. Running Trust. The third amended complaint alleged that Beecham had general power of attorney to act on behalf of Praxedes and that she had been appointed Praxedes's guardian ad litem. But in 1994 Praxedes had appointed Beecham and her sister Leia Bowers as "attorneys in fact" under a durable power of attorney, which required Beecham and Bowers to act "unanimously" and to both sign

---

[12]     Because we affirm the judgment for the City on the merits we do not address the City's arguments Running or Beecham lacked capacity to file this action and failed to comply with the Government Claims Act.

"whenever execution by [Praxedes's] attorney in fact" was required. Bowers did not know about the complaint until after its filing. In addition, a court did not appoint Beecham guardian ad litem until a month after the original complaint was filed.

Praxedes died in 2022, and the probate court appointed Beecham special administrator of Praxedes's estate with authority to maintain this action. Beecham and Bowers became cotrustees of the Running Trust and filed a motion in the trial court to substitute them as successor cotrustees of the Running Trust in place of Praxedes. The trial court granted that motion. The trial court also granted a motion allowing Beecham to substitute into the action as the personal representative for Praxedes's estate.

CICO and the Committee filed a motion for judgment on the pleadings, arguing Praxedes lacked capacity to sue and Beecham lacked authority from Praxedes to file the initial complaint in 2016 because (1) Praxedes was incompetent; (2) Beecham was not Praxedes's attorney-in-fact under the terms of a 1994 durable power of attorney; and (3) Beecham's application for the court to appoint her guardian ad litem was based on an invalid 2009 general power of attorney and failed to comply with certain procedural requirements. The trial court denied the motion, ruling Beecham cured any legal deficiency through her later appointment as guardian ad litem, which "could presumably have been premised on evidence of incompetency," in addition to the allegedly invalid 2009 general power of attorney. The court also observed the time to challenge that order had passed.

## 2. *CICO and the Committee Have Not Shown the Trial Court Erred in Denying Their Motion for Judgment on the Pleadings Based on Lack of Capacity*

A party to litigation "must have both capacity to sue (the right to come into court) and standing to sue (the right to state a cause of action seeking particular relief)." (*Smith v. Cimmet* (2011) 199 Cal.App.4th 1381, 1390; see *Washington Mutual Bank v. Blechman* (2007) 157 Cal.App.4th 662, 669.) "Incapacity is . . . a legal disability, such as minority or incompetency, which deprives a party of the right to represent his or her own interests in court." (*American Alternative Energy Partners II v. Windridge, Inc.* (1996) 42 Cal.App.4th 551, 559; accord, *Smith,* at p. 1390.) "Incapacity . . . can be cured during the pendency of the litigation." (*Washington Mutual Bank*, at p. 669; see *Center for Self-Improvement & Community Development v. Lennar Corp.* (2009) 173 Cal.App.4th 1543, 1557-1558 ["no further purpose is advanced by levying the additional penalty of dismissal" after a party cures a defect in capacity]; *American Alternative Energy Partners II*, at p. 559 [party may cure lack of capacity by substituting a party or entity having the requisite capacity].)

We review orders denying a motion for judgment on the pleadings under the same standard we apply to a general demurrer. (*Packard v. Packard* (2025) 108 Cal.App.5th 1284, 1290; *Estate of Dayan* (2016) 5 Cal.App.5th 29, 39-40.) "We treat the pleadings as admitting all material facts properly pleaded, but not contentions, deductions or conclusions of fact or law. . . . [¶] . . . We consider evidence outside the pleadings which

28

the trial court considered without objection." (*Estate of Dayan*, at p. 40.)

CICO and the Committee do not challenge the trial court's finding the order appointing Beecham guardian ad litem could have been based on evidence of Praxedes's incompetence (in addition to the 2009 power of attorney). Instead, they argue that appointment gave Beecham authority to file only the cause of action for elder abuse as Praxedes's personal representative and not the causes of action for injury to the Running property, which is owned by the Running Trust. As a result, CICO and the Committee argue, the trial court should have dismissed the trustee for lack of capacity to sue. The trial court, however, granted the motion to substitute Beecham and Bowers as cotrustees, and CICO and the Committee do not challenge that order or argue any defect in capacity to sue on behalf of the trust was not cured. No error here.

D. *Running Has Not Demonstrated the Trial Court Erred in Granting the Motion by the Committee and CICO for Nonsuit on Her Cause of Action for Trespass*

1. *Applicable Law*

"'Trespass is an unlawful interference with possession of property.' [Citation.] The elements of trespass are: (1) the plaintiff's ownership or control of the property; (2) the defendant's intentional, reckless, or negligent entry onto the property; (3) lack of permission for the entry or acts in excess of permission; (4) harm; and (5) the defendant's conduct was a substantial factor in causing the harm." (*Ralphs Grocery Co. v. Victory Consultants, Inc.* (2017) 17 Cal.App.5th 245, 261-262; see *Golden*

29

*Gate Land Holdings LLC v. Direct Action Everywhere* (2022) 81 Cal.App.5th 82, 90-91.)

A defendant may commit trespass by "causing the entry of some other person" on the plaintiff's property. (5 Witkin, Summary of Cal. Law (11th ed. 2025) Torts, § 803; see *Martin Marietta Corp. v. Insurance Co. of North America* (1995) 40 Cal.App.4th 1113, 1132 [citing Witkin]; Rest.2d Torts, § 158.) Such a case usually involves pollutants affecting the plaintiff's property, and the parties have not identified any California case outside that context where the plaintiff has maintained a claim. The Restatement Second of Torts, however, states: "If, by any act of his, [an] actor intentionally causes a third person to enter land, he is as fully liable as though he himself enters. Thus, if the actor has commanded or requested a third person to enter land in the possession of another, the actor is responsible for the third person's entry if it be a trespass." (Rest.2d Torts, § 158, com. j.) Another treatise suggests a defendant can be liable for causing another's trespass if he or she "benefit[s]" from the trespass and had "control over" the trespasser or "order[ed]" the trespasser's conduct. (75 Am.Jur.2d (2026) Trespass, § 58.) Still another states a person "who aids or encourages a trespass . . . may be liable even without personal participation in the actual trespass where the actual trespasser either was directed by him or her or relied on" the defendant's representations encouraging or advising the trespass. (7 Speiser et al., Am. Law of Torts (2026) § 23:33.) Each of these authorities suggests liability on this theory requires some intentional conduct on the part of the defendant to cause another to enter the plaintiff's property. As discussed, we review an order granting nonsuit de novo.

(*Jimenez v. Hayes Apartment Homes, LLC*, *supra*, 115 Cal.App.5th at p. 1083.)

### 2. *The Arguments Running Did Not Forfeit Do Not Show the Trial Court Erred*

Running alleged CICO and the Committee entered her property without her knowledge or consent to bury water measuring devices (also called "weir boxes" or just "boxes"), seal the tunnel, use her property for purposes the easement did not permit, and prevent water she was entitled to receive from entering her property. She also alleged the defendants allowed her neighbor Robert Montano to place a sewer pipe under the canal on Running's property and a drain pipe over the canal.

Following Running's case-in-chief CICO and the Committee moved for nonsuit on her trespass cause of action, arguing Running failed to establish they entered her property intentionally, recklessly, or negligently, including by allowing or authorizing Montano to lay sewer and drain lines on her property. CICO and the Committee also argued Running failed to show their alleged conduct was a substantial factor in causing any harm. And they contended CICO owned the canal and tunnel and replaced the canal with an underground pipeline in part for health and safety reasons. Running disputed CICO's ownership of the canal and tunnel in her opposition to the motion for nonsuit and argued that, even if CICO had "valid public safety reason[s]" for taking the canal and tunnel out of service, the Indenture did not allow CICO and the Committee "to profit from a public safety measure for personal gain."

The trial court granted the motion for nonsuit and found there was no evidence of any unauthorized entry on Running's

property or damages resulting from any such entry. The court also found Running could not demonstrate the diversion of water from the canal constituted a trespass because Running did not own the water and the defendants "lawfully diverted [the water] for imminent public health and safety reasons."

Running's arguments on appeal are difficult to follow for several reasons. First, her opening brief does not identify the elements of a cause of action for trespass or explain how the evidence she cites satisfies those elements. Second, in both her opening and reply briefs Running frequently provides a single footnote at the end of a paragraph including many (up to 46) discrete record citations for the factual assertions made (somewhere) in that paragraph, without any indication of (or obvious system for determining) which citation supports which assertion.[13] She also lists dozens of purportedly admitted

---

[13] For example, footnote 97 of Running's opening brief: "RT:1883:22-28;2001:3-10;2001:3-10;1919:26-27;1925:2-21;1927:6-1928:17;1929:11-22;1930:18-23;1931:5-1933:2;1933:20-1934:4;1935:5-1937:4;1940:6-26;1941:9-12;1942:18-23;1946:6-11;1947:7-1948:27;1949:18-1950:2;1968:7-22;1971:22-25;1973:1-1974:14;1975:3-1976:22;1977:1-5;1978:9-20;1983:22-25;1986:9-25;1987:1-1989:7;1991:4-11;1992:13-1993:12;2003:10-27;2044:23-2045:6;2109:8-2110:4;2112:18-22;2117:4-25;2120:16-28;2123:4-17." And footnote 101: "101 RT:1162:16-28,1168:10-17,1168:27-28,1169:5-16,1170:2-27,1171:22-27, 1174:16-28,1175:3-13,1176:4-6,1194:7-26,1195:1-14,1197:2-8,1197:11-27,1198:3-27,1199:19-1200:9,1201:1-15,1201:21-28,1202:14-28,1203:4-6, 1204:1-4,1205:18-21,1205:18-1206:6,1206:18-1207:6,1209:7-12,1211:26-1212:9,1213:4-19,1216:21-23,1218:23-1219:2,1220:1-1221:27,1227:1-21,1228:21-1229:7,1230:3-6,1231:9-14,1234:1-5,1234:12-1235:8,1236:8-21,1247:16-1248:17,1249:16-

32

exhibits, but does not address their legal relevance.  Finally, she uses headings such as "Exclusions" without explaining what she means by that term or identifying how the trial court erred in (presumably) excluding the evidence identified under that heading or citing any relevant law.

In these respects Running's briefs do not comply with the California Rules of Court, which require a party on appeal to "[s]tate each point under a separate heading or subheading summarizing the point, and support each point by argument and, if possible, by citation of authority" and to "[s]upport any reference to a matter in the record by a citation to the volume and page number of the record where the matter appears."  (Cal. Rules of Court, rule 8.204(a)(1)(B), (C).)[14]  "'In order to demonstrate error, an appellant must supply the reviewing court with some cogent argument supported by legal analysis and citation to the record.'"  (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153; see *ibid.* [an appellate court is not bound to develop the appellant's arguments].)  Much of Running's argument is not cogent.  "'"[E]very brief should contain a legal argument with citation of authorities on the points made.  If none is furnished on a particular point, the court may treat it as waived, and pass it without consideration."'"  (*Perez v. Galt Joint Union Elementary School Dist.* (2023) 96 Cal.App.5th 150, 170; see *Brown v. El Dorado Union High School Dist.* (2022) 76 Cal.App.5th 1003,

---

1250:20,1250:26-1252:16,1252:23- 1253:5,1253:10-16,1254:6-12,1279:18-27,1280:11-24,1282:16-19,1282:26-1283:16."

[14]     We note the defendants also failed to provide record citations for a number of points in their respondents' brief.

33

1022.)  Thus, we disregard "'conclusory arguments that are not supported by pertinent legal authority'" or fail to disclose the reasoning by which Running reached the conclusions she wants us to adopt.  (*United Grand Corp.*, at p. 153.)

Regarding record citations, "'"[i]t is the duty of a party to support the arguments in its briefs by appropriate reference to the record, which includes providing exact page citations."'" (*Woolard v. Regent Real Estate Services, Inc.* (2024) 107 Cal.App.5th 783, 785; see *Hernandez v. Vitamin Shoppe Industries Inc.* (2009) 174 Cal.App.4th 1441, 1453.)  Listing 46 record locations that may or may not correspond to an assertion in a brief does not satisfy this duty.  (See *Woolard*, at pp. 785-786 [an appellate court may disregard any factual contention not supported by a proper citation to the record]; *Hernandez*, at p. 1453 [same]; see also *Citizens for Positive Growth & Preservation v. City of Sacramento* (2019) 43 Cal.App.5th 609, 626, fn. 8 ["'If no citation "is furnished on a particular point, the court may treat it as [forfeited]."'"].)  Thus, we disregard mass, undifferentiated references to the record and the factual assertions purportedly supported by them.

Even if we do our best to understand and consider Running's arguments and evidence, she has not shown the trial court erred in granting the motion by CICO and the Committee for nonsuit on her cause of action for trespass.  First, Running argues the trial court erred in ruling diversion is not a trespass, but the cases she cites do not support her argument.  She cites *Brown v. Mullin* (1884) 65 Cal. 89, which addressed water rights, but not in the context of a cause of action for trespass (*id.* at pp. 89-90), and *Civic Western Corp. v. Zila Industries, Inc.* (1977) 66 Cal.App.3d 1, which addressed trespass, but not in the context

34

of water rights (*id.* at p. 17). Though the diversion of water in some circumstances may amount to a trespass (see Wat. Code, § 1051, subd. (d) [giving the Water Resources Control Board authority to enjoin an unauthorized diversion or use of water as a trespass]),[15] the trial court granted the motion for nonsuit in part based on the defendants' affirmative defense they diverted water from the canal for public safety reasons. Running effectively conceded that issue in her opposition to the motion and does not challenge that basis for the court's ruling.[16] Running also argues

---

[15] In *Fall River Valley Irrigation Dist. v. Mt. Shasta Power Corp.* (1927) 202 Cal. 56 the Supreme Court held interference with riparian water rights constituted a trespass. (*Id.* at pp. 70-71.) Even if Running's rights were tantamount to riparian rights, the California Constitution limited riparian rights after *Fall River*, and later cases involving trespass on water rights appear limited to actions under Water Code section 1052, which authorizes the Attorney General and the Water Resources Control Board to enjoin unauthorized diversions or uses of water as a trespass. (Wat. Code, § 1052, subds. (b), (d); see *People v. Shirokow* (1980) 26 Cal.3d 301, 304; *California Water Curtailment Cases* (2022) 83 Cal.App.5th 164, 183; *Millview County Water Dist. v. State Water Resources Control Bd.* (2014) 229 Cal.App.4th 879, 895-896; see generally *Orange County Water Dist. v. Sabic Innovative Plastics US, LLC* (2017) 14 Cal.App.5th 343, 413-414.)

[16] Running asserts in her opening brief she objected to the trial court's ruling CICO closed the canal for health and safety reasons, but she made that objection in the context of an earlier motion to exclude an expert witness. She does not argue the trial court erred in granting the motion for nonsuit in part on an affirmative defense, which is appropriate in certain circumstances, including where, as here, the facts are undisputed CICO took the canal out of service in part for health and safety

35

CICO and the Committee are liable for trespass because they exceeded the scope of the easement by diverting water without connecting her property to the new pipeline. Again, however, Running fails to challenge or even acknowledge the court's ruling CICO and the Committee diverted water from the canal out of necessity for public safety, and it is unclear how the failure by CICO and the Committee to connect her to the new pipeline states a cause of action for trespass.

Running also argues CICO and the Committee trespassed on her property by taking "seepage" (the water that seeped through cracks in the canal to sustain her trees), but Running did not allege that as a basis for trespass in her complaint. Running also appears to argue the trial court erred by excluding the testimony of her expert witness Michael Preszler, but she does not identify why the trial court excluded his testimony or explain how the trial court erred in making such a ruling. Finally, Running forfeited several arguments she made for the first time in her reply brief (*Sandton, supra*, 113 Cal.App.5th at p. 533), including that maintenance workers did not always use the routes permitted under the Indenture to access the canal, which, in any event, Running also did not allege as a basis for trespass in her complaint.

---

reasons. (See *Grenier v. City of Irwindale* (1997) 57 Cal.App.4th 931, 940 [granting nonsuit where the evidence in the plaintiff's case established the defense of design immunity as a matter of law]; see also § 581c, subd. (b) [nonsuit is appropriate where the evidence supported granting the motion].)

E. *The Trial Court Erred in Granting the pre-Running I Motion by CICO and the Committee for Summary Adjudication on Running's Breach of Contract and Fraud Causes of Action*

1. *Applicable Law and Standard of Review*

The court may grant a motion for summary adjudication when it "completely disposes of a cause of action, an affirmative defense, a claim for damages, or an issue of duty." (§ 437c, subd. (f)(1); see *Rancho Cucamonga Central School Dist. v. Superior Court* (2025) 116 Cal.App.5th 718, 721.)  A defendant who moves for summary adjudication has the initial burden of showing one or more elements of the challenged cause of action cannot be established or that there is a complete defense to the cause of action.  (See § 437c, subd. (p)(2); *Woodworth v. Loma Linda University Medical Center* (2023) 93 Cal.App.5th 1038, 1053.)  "Once the moving defendant has carried its initial burden, the burden shifts to the plaintiff to show a triable issue of material fact with respect to the cause of action.  [Citation.]  The trial court must consider all of the evidence and the reasonable inferences from it in the light most favorable to the nonmoving party.  [Citation.]  The court may grant the motion if there is no triable issue of material fact and the issues raised by the pleadings may be decided as a matter of law.  [Citations.]  'There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'" (*Woodworth*, at p. 1053; see § 437c, subd. (p)(2); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843, 850.)

We review an order granting a motion for summary adjudication de novo.  (*Sandton*, *supra*, 113 Cal.App.5th at p. 534; *Woodworth v. Loma Linda University Medical Center*, *supra*, 93 Cal.App.5th at p. 1053.)  "'"[W]e take the facts from the record that was before the trial court when it ruled on [the] motion.  [Citation.] . . . We liberally construe the evidence in support of the party opposing [the motion] and resolve doubts concerning the evidence in favor of that party."'"  (*Hampton v. County of San Diego* (2015) 62 Cal.4th 340, 347; see *Woodworth*, at p. 1053.)  "When there are no material factual disagreements, the appellate court considers only the dispositive legal issues."  (*Sandton*, at p. 534; see *The Pep Boys Manny Moe & Jack of California v. Old Republic Ins. Co.* (2023) 98 Cal.App.5th 329, 334-335.)

"'The trial court's stated reasons for granting summary [adjudication] are not binding on us because we review its ruling, not its rationale.'"  (*Sandton*, *supra*, 113 Cal.App.5th at p. 534; see *The Pep Boys Manny Moe & Jack of California v. Old Republic Ins. Co.*, *supra*, 98 Cal.App.5th at pp. 334-335.)  However, we generally will not consider on appeal an argument the moving party did not raise in the motion, even if that ground would have been sufficient.  (*San Jose Construction, Inc. v. S.B.C.C., Inc.* (2007) 155 Cal.App.4th 1528, 1545; see *Noe v. Superior Court* (2015) 237 Cal.App.4th 316, 335 [reviewing court "generally will not consider an argument 'raised in an appeal from a grant of summary judgment . . . if it was not raised below and requires consideration of new factual questions'"]; see also *Borman v. Brown* (2021) 59 Cal.App.5th 1048, 1070, fn. 21 [same rule for motions for summary adjudication].)  Moreover, we may not affirm a grant of summary adjudication on a ground not

relied on by the trial court unless the parties have "already been provided 'an opportunity to present their views on the issue,'" including by submitting supplemental briefs.  (*Bains v. Moores* (2009) 172 Cal.App.4th 445, 471; see § 437c, subd. (m)(2).)  And, "'[a]lthough we conduct a de novo review, we "must presume the judgment is correct, and the appellant bears the burden of demonstrating error."'"  (*Sandton*, at p. 534; see *The Pep Boys*, at pp. 334-335.)

> 2.     *The Trial Court Erred in Granting the Motion for Summary Adjudication on Running's Contract Causes of Action*

> > a.     *Under* Running I *We Must Reverse the Order Granting CICO and the Committee Summary Adjudication on Running's Contract Causes of Action*

Running alleged the defendants breached the Indenture beginning in 2010 by diverting water allocated to her, failing to maintain the canal, exceeding the scope of the easement by permitting Montano to put sewer and drainage lines under and over the canal, and creating a fire and health hazard and other dangerous conditions by failing to maintain the canal and tunnel. She alleged those breaches created dangerous conditions on her property, diminished the value of her property, damaged trees, appropriated water, and caused her to incur various costs. Running's cause of action for breach of the implied covenant of good faith and fair dealing relied on the same (and additional) allegations.

39

The defendants' motions for summary adjudication on the contract causes of action argued that the Indenture merely clarified the parties' rights under the Compromise Agreement and that, because Running was not a party to the Compromise Agreement, she could not enforce the Indenture. Alternatively, the defendants argued Running had not performed her obligations under the Compromise Agreement or the Indenture, which the defendants argued incorporated the requirement under the Compromise Agreement that old users pay CICO to deliver water to their properties. Regarding the alleged contractual obligation to maintain the tunnel and canal, the defendants argued only in connection with Running's cause of action for negligence (not her contract causes of action) the Indenture created a "permissive, not mandatory," right and obligation to maintain, repair, and operate the canal and tunnel. The defendants also denied authorizing Montano to enter Running's property to install sewer or drainage lines, but they made that argument in the context of the cause of action for trespass.

As stated, the trial court granted the defendants' motions for summary adjudication on the contract causes of action. The court ruled Running's water rights under the Indenture were contingent on her demand and payment for water at the same rates and under the same conditions as other users of water managed by CICO. The court ruled that, because Running offered no evidence challenging the defendants' contention she never asked CICO to deliver her water from the canal and never paid any assessment for its delivery, she could not enforce the Indenture. The court also interpreted the Indenture to impose only a permissive right on the defendants to maintain the canal and tunnel. And the court ruled the Indenture did not impose a

40

mandatory duty on the defendants to avoid creating dangerous conditions on Running's property or to prevent Montano from putting sewer and drainage lines under and above the canal.

In *Running I* we stated that the trial court's interpretation of the Indenture requiring Running to demand and pay for water from the canal was "by no means clear" and that the City (which relied on declarations from CICO) did not submit any evidence CICO had ever charged Running for water that flowed through the canal. We also said Running provided evidence she had paid every assessment and charge CICO had imposed. (*Running I, supra*, B293638.) Regarding Running's other bases for her contract claims, we said that, because the defendants failed to address them in their notices of motion for summary judgment, the defendants were not entitled to summary adjudication. (See *Running I, supra*, B293638 [notice of motion must state each cause of action the moving party is seeking to summarily adjudicate], citing Cal. Rules of Court, rule 3.1350(b).) We observed, however, Running did "not identify any language in the Indenture creating a mandatory duty (rather than a permissive right) of the City and AVWC (and others) to maintain the easement." Thus, we concluded that Running failed to demonstrate the City had a contractual obligation to maintain the easement, but that, because the City failed to make that argument, we could not affirm the order granting the City's motion on Running's contract causes of action. (*Running I, supra*, B293638.) Because CICO and the Committee also failed to make that argument, we must now reverse the order granting

41

their motion for summary adjudication on Running's contract causes of action as well.[17]

>    b.    *The Trial Court's Order Granting the City's Motion for Nonsuit Does Not Make The Court's Errors in Granting the Motion for Summary Adjudication Harmless*

In challenging the order granting the motion by CICO and the Committee for summary adjudication on her contract causes of action, Running reminds us the defendants argued in their motions only that Running could not enforce the Indenture and that, even if she could, she failed to perform her obligations under it.[18] For that reason, Running contends, we should again

---

[17] At oral argument counsel for the defendants asked that we at least affirm the order granting the Committee's motion for summary adjudication on Running's contract causes of action because the Committee is not a party to the Indenture. The Committee, however, did not make that argument in its motion for summary adjudication or in its respondents' brief. (See *Doe v. Roman Catholic Archbishop of Los Angeles* (2021) 70 Cal.App.5th 657, 672 [a defendant forfeits arguments on appeal by not making them "in its motion for summary judgment"]; *Jackpot Harvesting Co., Inc. v. Superior Court* (2018) 26 Cal.App.5th 125, 155 ["arguments not raised in summary judgment proceedings" are forfeited]; see also *Johnson v. Department of Transportation* (2025) 109 Cal.App.5th 917, 935 [arguments not in briefs are forfeited].)

[18] Running also quotes the following sentence from *Running I* and suggests it represents a "ruling": "By diverting [Running's] irrigation water from the canal to the pipeline without connecting her to the pipeline, the City and AVWC deprived her of those

reverse the trial court's order granting the motion for summary adjudication on the contract causes of action.

CICO and the Committee argue it's too late for that. They contend Running "waived" that argument by failing to ask the court that tried the case (Judge Brazile) to reconsider the decision of the court that ruled on the motion for summary adjudication (Judge Beaudet). CICO and the Committee cite section 1008, subdivision (c), which allows a party to ask the court to reconsider a motion based on new facts, circumstances, or legal authorities. (See *State of California v. Superior Court (Flynn)* (2016) 4 Cal.App.5th 94, 100-101 [appellate opinion changing the applicable law during the pendency of the action authorized a different trial judge to change a previous judge's order].) CICO and the Committee are incorrect on this point. Running's failure to seek reconsideration of the trial court's order did not waive or forfeit her right to challenge the order on appeal after judgment, which is Running's first opportunity to challenge that order. (See *Angelica Textile Services, Inc. v. Park* (2013) 220 Cal.App.4th 495, 504 ["there is no requirement that a losing party move for reconsideration of an order granting summary adjudication"]; see also *Wilson v. County of San Joaquin* (2019) 38 Cal.App.5th 1, 7 ["'an order granting summary adjudication is an intermediate order which is "reviewable on appeal from the *final judgment* in the action"'"].)

CICO and the Committee also argue any error in granting their motion for summary adjudication on Running's contract

water rights in breach of the Indenture." (*Running I, supra*, B293638.) As is clear from the context of this sentence, however, the quoted passage was summarizing Running's allegations, not expressing this court's view on the merits.

43

claims did not prejudice Running because she did not prove her contract claims at trial against the City, which were identical to those against them. The defendants' defenses, however, were not identical. As discussed, the trial court granted the City's motion for nonsuit on the contract claims based in part on the City's public policy defense, and CICO and the Committee do not argue that defense is available to them as private entities. And our discussion in *Running I* of the City's motion did not reach the trial court's other grounds for granting nonsuit, including that the Indenture did not prevent CICO from diverting water for health and safety reasons and that CICO, not the City, had an obligation under the Indenture to "maintain or repair the canal."

Regarding the affirmative defense of necessity for health and safety reasons, we stated in *Running I* the defense did not foreclose Running's elder abuse cause of action based on the defendants' alleged "failure to ensure she continued to receive the irrigation water to which she was entitled [under the Indenture], whether by connecting her to the pipeline or making some other arrangement for her irrigation water." (*Running I, supra,* B293638.) For the same reason, that allegation could support Running's contract claims and was not resolved by the trial court's ruling on the City's motion for nonsuit. Thus, the trial court (or the jury, if there are triable issues of material fact) must still determine whether Running is entitled to any water under the Indenture and, if so, whether the Indenture requires CICO and the Committee (but not the City) to provide another means of accessing that water.

Relatedly, the trial court stated in ruling on the City's motion for nonsuit Running "was only entitled to a limited amount of the water pursuant to the 1920 agreement for

44

irrigation purposes." Running, however, argues that she also is entitled to water under the Indenture for domestic use and that the trial court's basis for limiting its ruling to "irrigation" water was unclear. This is yet another reason the trial court's ruling on the City's motion for nonsuit does not resolve Running's contract claims against CICO and the Committee.

The basis for the trial court's ruling CICO, not the City, had the obligation to maintain the easement is unclear from the record.[19] Running, however, still cites no language in the Indenture (as opposed to the Compromise Agreement, to which the Gordons were not parties) requiring the "second parties" to perpetually maintain the easement as a whole. Running identifies language in paragraph THIRD of the Indenture requiring the second parties to maintain "the openings, meters and appliances" installed for delivering domestic water to the Gordons' property, but the scope of that obligation is much narrower than the obligation to maintain the entire easement (including the canal and the tunnel). Running also argues CICO and the Committee must maintain the canal and tunnel in order for their obligation to maintain the apertures and boxes to have meaning. She does not cite any authority for this proposition, but she may test it on remand. Finally, Running cites *Starlight Ridge South Homeowners Assn. v. Hunter-Bloor* (2009) 177 Cal.App.4th 440 in arguing the "grantee of an easement for a water ditch must maintain and repair it." *Starlight Ridge*, however, turned on the interpretation of language in a

---

[19] See the discussion of whether the Committee is an "owner" of the easement under the Indenture, which is based on whether the Committee is a "second party" under the Indenture, *infra*.

45

homeowner association's covenants, conditions, and restrictions that are not relevant here. (*Id.* at pp. 445-446.)[20]

Therefore, applying the trial court's ruling on the City's motion for nonsuit in the context of the motion for summary adjudication, as CICO and the Committee urge, would deprive Running of her right to try her contract claims against CICO and the Committee. (See § 475 [prejudicial error occurs where error "affect[s] the substantial rights" of a party]; *640 Octavia LLC v. Walston* (2025) 111 Cal.App.5th 861, 869 [reversal is appropriate where a party demonstrates prejudicial error caused the appellant substantial injury].) Because Running's cause of action for breach of the implied covenant of good faith and fair dealing is derivative of her cause of action for breach of contract (see *Running I, supra,* B293638), we reverse the trial court's order granting summary adjudication on both causes of action.[21]

---

[20] Running also argues her "easement includes additional rights 'reasonably necessary' to use it." The Indenture, however, did not create an easement for Running. It established Running's rights to water in the canal and an easement for the second parties (including CICO and members of the Committee) to operate and maintain the canal and tunnel on Running's property. To the extent that easement includes additional rights reasonably necessary to use it, those rights belong to CICO and the Committee's members. (See *Schmidt v. Bank of America, N.A.* (2014) 223 Cal.App.4th 1489, 1505 ["'The owner of a dominant estate [as opposed to the servient estate] may do that which is reasonably necessary to enjoy the easement and, as an incident thereto, keep it in repair and fit for use.'"].)

[21] Running also alleged a cause of action for unjust enrichment and argues the trial court erred in granting CICO's and the Committee's motions for summary adjudication on that

### 3. *The Trial Court Erred in Granting the Motion for Summary Adjudication on Running's Cause of Action for Fraud*

Running based her cause of action for fraud on the defendants' alleged failure to disclose their intention to divert water from the canal to the underground pipeline and a variety of related actions. Running alleged she relied to her detriment on the concealment of those material facts, which the defendants were "duty-bound" to disclose because they had a fiduciary relationship with her.

In support of their motions for summary adjudication, CICO and the Committee argued they did not have a duty to disclose actions they did not undertake, such as taking Running's water rights or allowing a neighbor to trespass on her property. Running disputed those contentions and argued the defendants' motion failed to address other actions—such as sealing the tunnel—Running alleged they had a duty to disclose. The trial court granted the motion for summary adjudication on the fraud cause of action because Running failed to raise a triable issue of

cause of action. As we explained in *Sepanossian v. National Ready Mixed Concrete Co.* (2023) 97 Cal.App.5th 192, there is no cause of action for unjust enrichment in California. (*Id.* at p. 206; see *City of Oakland v. Oakland Raiders* (2022) 83 Cal.App.5th 458, 477.) Moreover, unjust enrichment "is generally an inapplicable basis for restitution where the parties have an enforceable express contract." (*Sepanossian*, at p. 207.) Thus, a plaintiff like Running who alleges breach of an express contract cannot assert a quasi-contract claim for restitution based on unjust enrichment without also pleading an inconsistent cause of action alleging the absence of an enforceable agreement. (*Ibid.*) The complaint does not include any such cause of action.

material fact regarding the defendants' alleged taking of her water rights.

Running again argues the motions for summary adjudication by CICO and the Committee failed to address a variety of conduct they allegedly concealed from her, such as sealing the tunnel.[22]  Running is correct.  Thus, we cannot affirm the trial court's order granting the motion by CICO and the Committee for summary adjudication on Running's fraud cause of action because the motion did not fully resolve that cause of action.  (See § 437c, subd. (f)(1).)

> 4. *Running Has Not Shown the Trial Court Erred in Granting the Motion for Summary Adjudication on Her Cause of Action for Financial Elder Abuse*

As discussed, Running alleged CICO and the Committee committed financial elder abuse by taking and diverting her water, sealing the tunnel without reinforcing it, failing to maintain the canal and tunnel, and issuing the notice of abatement.  In support of their motions for summary adjudication, CICO and the Committee argued among other things that they did not take any property of Running's for a wrongful purpose or with intent to defraud her and that they did not "target[ ]" Running or wrongfully take her assets due to her "status as an elderly or infirm person."  Running argued she did

---

[22]  She also contends CICO's and the Committee's motions failed to address their alleged misrepresentation Running had an obligation to "clear the canal and pay for reconnection" to the new pipeline.  Running, however, did not allege that as a basis for her fraud cause of action.

48

not have to show the defendants "targeted" her for her age under the Elder Abuse Act, but she did not refute the argument CICO and the Committee did not take her property for a wrongful purpose or with intent to defraud her, despite acknowledging that was an element of her cause of action.

In granting the motions for summary adjudication by CICO and the Committee on this cause of action, the trial court cited Running's failure to create a triable issue of material fact on the element of wrongfully or fraudulently taking property. The court also ruled, as CICO and the Committee argued in support of their motions, unrefuted evidence demonstrated CICO and the Committee took the canal out of service for legitimate health and safety reasons and "not for any purpose, wrongful or not, related to [Running]." The court further ruled Running presented insufficient evidence to create a triable issue of material fact regarding whether CICO or the Committee "harbored an intent to defraud or unduly influence [Running] by any of the other alleged actions taken or not taken by Defendants . . . ."

Without citing any legal authority, Running argues the defendants (without differentiating among them) sealed the tunnel "in bad faith" in exchange for a neighbor's agreement to quitclaim the easement back to the defendants. She also asserts that agreement showed an "intent to take for a wrongful use," without identifying that use or how it may be wrongful. Running cites evidence purporting to show the defendants paid her neighbor $70,000 and did not offer her any money to quitclaim the easement on similar terms. None of these arguments undermines the trial court's ruling Running failed to create a triable issue of material fact regarding whether CICO or the

Committee took her property for a wrongful purpose or with intent to defraud her.

Running also argues the notices of motion by CICO and the Committee did not comply with California Rules of Court, Rule 3.1350 because they "did not request summary adjudication of any issue, but only entire causes of action." Running claims to have made this objection in the trial court, but she cites an objection concerning the application of this rule to the defendants' original separate statement (which was superseded by a joint revised separate statement). Even if Running had not forfeited this argument, she does not identify any prejudice resulting from the allegedly noncompliant notices.

5. *Running Has Not Shown the Trial Court Erred in Granting the Motion for Summary Adjudication on Her Cause of Action for Destruction of Timber*

Civil Code section 3346 creates liability for "wrongful injuries to timber, trees, or underwood upon the land of another, or removal thereof." (*Id.*, subd. (a).) The "purpose of section 3346, like other timber trespass statutes, is ""to educate blunderers (persons who mistake location of boundary lines) and to discourage rogues (persons who ignore boundary lines), to protect timber from being cut by others than the owner."""" (*Scholes v. Lambirth Trucking Co.* (2020) 8 Cal.5th 1094, 1110.) Civil Code section 3346 refers "not to the common law action of trespass but rather the kind of acts long thought of as 'timber trespass' or 'timber misappropriation'—essentially, intentionally severing or removing timber from another's land without the owner's consent." (*Scholes*, at p. 1104; see *Russell v. Man* (2020)

50

58 Cal.App.5th 530, 536-537.) Thus, Civil Code section 3346 requires "an intentional crossing of boundary lines into the land of another to injure timber." (*Russell*, at p. 537; see *ibid.* [even if the defendant trespassed on his neighbor's property by cutting roots growing into the defendant's property, that action, which killed the neighbor's trees, did not violate section 3346].)

Running alleged CICO and the Committee killed her trees by diverting water from the canal and burying her weir boxes without prior notice. CICO and the Committee argued in support of their motions for summary adjudication that Running presented no evidence they went onto Running's property and intentionally damaged or killed her trees. In opposing the motion Running argued only that CICO and the Committee were liable for damaging her trees by sealing the tunnel. The trial court ruled Running failed to raise a triable issue of material fact because she did not show she had any rights to the water in the canal.

Running does not appear to make any substantive argument in her opening brief regarding her cause of action for destruction of timber. She merely restates the trial court's ruling and asserts the defendants "did not dispute diversion."[23] Thus, Running forfeited any argument the trial court erred in granting summary adjudication of that cause of action. (See *United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153

---

[23] She also argues, as she did in the context of the cause of action for elder abuse, CICO and the Committee's "moving papers were defective." As discussed, Running does not demonstrate prejudice as a result of any defect.

51

[forfeiture results from appellant's failure to make a cogent argument supported by legal authority and factual citations].)

Even if she did not forfeit the argument, CICO and the Committee correctly argued Running failed to create a triable issue of material fact regarding whether they intentionally entered Running's property to damage or kill her trees.[24] (See *Russell v. Man*, *supra*, 58 Cal.App.5th at p. 537 [plaintiff failed to state a cause of action for destruction of timber where he did not allege the defendant intentionally damaged his trees].) Moreover, Running did not allege destruction of timber on that basis in her complaint.

6. *Running Has Not Shown the Trial Court Erred in Granting the Motion for Summary Adjudication on Her Cause of Action for Conversion*

"Conversion is generally described as the wrongful exercise of dominion over the personal property of another." (*Fremont Indemnity Co. v. Fremont General Corp.* (2007) 148 Cal.App.4th 97, 119; see *Duke v. Superior Court* (2017) 18 Cal.App.5th 490, 501.) "The tort of conversion applies to personal property, not real property" (*Salma v. Capon* (2008) 161 Cal.App.4th 1275, 1295), but personal property that is severable from real property may be converted (*California Grape Control Board, Ltd. v. Boothe Fruit Co.* (1934) 220 Cal. 279, 281-282; Gaab and Church Reese, Cal. Practice Guide: Civil Procedure Before Trial Claims & Defenses (The Rutter Group 2025) ¶ 12:107; 14A Cal.Jur.3d

---

[24] Because the trial court did not rule on this ground, we gave the parties an opportunity to file supplemental briefs under section 437c, subdivision (m)(2), on this issue.

(2026) Conversion, § 11). "'Water in its natural state is a part of the land and therefore real property. When severed from the realty, reduced to possession, and placed in containers, it becomes personal property.'" (*Sandton*, *supra*, 113 Cal.App.5th at p. 524 [quoting 13 Witkin, Summary of Cal. Law (11th ed. 2017) Personal Property, § 108.)

Running alleged CICO and the Committee "interfered" with her property by "taking possession of the water that would have flowed to her property had they not diverted it" and asserting "dominion and control over her weirs and her tunnel by burying her weirs and by plugging up the tunnel," which prevented her from "having access to water." Running further alleged her damages from the conversion included "the value of the water taken, the cost to replace dead trees and vegetation, the cost safely [to] secure the Gordon Tunnel and restore the irrigation ditch, the cost to restore the stability of the soil and improvements on plaintiff's property, the cost to render the Gordon Tunnel and irrigating delivery system safe again and other further damages according to proof."

In support of their motions for summary adjudication, CICO and the Committee argued among other things that Running's "conversion claim is premised on [their] alleged taking of her water rights," which is not actionable in conversion. In her opposition Running argued that water is severable from land and can be converted and that real property also can be converted. The trial court granted the motion for summary adjudication because Running based her claim "on the contention that [CICO and the Committee] wrongfully took or infringed upon her water rights," and the court ruled she had no such rights.

Running argues "[w]ater is severable from land and . . . can be converted." She cites *California Grape Control Board, Ltd. v. Boothe Fruit Co.*, *supra*, 220 Cal. 279, where the Supreme Court affirmed judgment for the plaintiff after the defendant entered his vineyard, picked 47 tons of grapes, "carried them away and converted them into raisins, which were marketed for its own benefit." (*Id.* at p. 281.) *California Grape Control Board, Ltd.* is consistent with the law of conversion as applied to water rights. Like the grapes on the vine in that case, water cannot be converted unless and until it is "'severed from the realty'" and "'reduced to possession.'" (See *Sandton*, *supra*, 113 Cal.App.5th at p. 524.) Because Running neither alleged nor produced evidence of that, her cause of action for conversion fails.[25]

7.      *Running Has Not Shown the Trial Court Erred in Granting the Committee's Motion for Summary Adjudication on Her Cause of Action for Negligence*

In addition to alleging the defendants owed her a duty of care under the Indenture, Running also alleged they owed a duty "under the law not to damage, take or devalue" her property and to "faithfully manage water rights and maintain the Gordon Tunnel" and the canal. In her complaint Running did not identify the source of these alleged duties. Running further

---

[25]      Although the trial court did not grant the motion for summary adjudication on this ground, Running addressed it in her opening brief. Thus, she had "an opportunity to present [her] views on the issue," within the meaning of section 437c, subdivision (m)(2). (See *Hooked Media Group, Inc. v. Apple Inc.* (2020) 55 Cal.App.5th 323, 336, fn. 1; *Bains v. Moores*, *supra*, 172 Cal.App.4th at p. 471, fn. 39.)

alleged the defendants breached those unspecified duties and failed to use reasonable care by, among other things, taking her water rights, destroying her trees, using her property for the benefit of others, and failing to maintain the easement.

In support of their motions for summary adjudication CICO and the Committee argued they did not owe duties to Running to faithfully manage her water rights and to maintain the tunnel and canal. They also contended CICO owned the easement and has "preserved the easement in its ordinary condition and kept it in good repair" as required by law. The defendants' material fact no. 16 in the joint revised separate statement stated "CICO owns the easement for the open cement canal" and cited declarations from CICO's president and chief executive officer (DeJesus) and the Committee's administrator (Berry). Running disputed that fact, citing the Indenture (and several sources having no relevance to the easement's ownership).

The trial court denied CICO's motion for summary adjudication on Running's cause of action for negligence (remember, Running went to trial against CICO on her negligence cause of action) and recognized "the duty to maintain the easement may arise as a matter of law" under Civil Code section 845, subdivision (a). That statute states: "The owner of any easement in the nature of a private right-of-way, or of any land to which any such easement is attached, shall maintain it in repair." The trial court granted the Committee's motion for summary adjudication, ruling Running failed to create a triable issue of material fact regarding whether the Committee (as opposed to CICO) owned the easement. Specifically, the court stated Running contended the Committee was an owner of the

55

easement, but the evidence she cited in response to material fact no. 16 "[did] not support this contention."

Running argues the trial court's ruling CICO owned the easement contradicts the Indenture, which granted the easement to all "second parties." That may be, but the Indenture identifies the "second parties" as the individual members of the Committee, not the Committee. The Committee is not an "owner" of the easement under the Indenture. (See Civ. Code, § 845, subd. (a).) The Indenture also "inure[s] to the benefit" of the "successors and assigns of the parties," but Running does not argue the Committee is a successor or assignee of any of the second parties. Instead, Running argues each of the members "vested joint control" in the Committee. Running cites no evidence in support of that contention and cites no authority suggesting "joint control" is sufficient to create a duty to maintain an easement owned by someone else.[26]

In addition, Civil Code section 845, subdivision (a), imposes a duty to maintain an easement only on "owners." Other statutes in the same article (which addresses "Rights and Obligations of Owners") refer to "tenants" (Civ. Code, § 819), "lessors" (*id.*, § 822) and "lessees" (*id.*, § 823). If the Legislature intended to impose the duty to maintain an easement on such lesser property interests, it would have included them in section 845,

---

[26] Running cites several prior cases in the centuries-long history of this litigation, none of which makes the Committee a "second party" under the Indenture or identifies the Committee as a successor to the rights and obligations of those parties. For example, she cites *Gordon, supra*, 164 Cal. 88, but that decision pre-dates the Indenture and cannot have created or acknowledged the Committee's ownership in the easement resulting from that agreement.

subdivision (a).  (See *Prang v. Los Angeles County Assessment Appeals Bd.* (2024) 15 Cal.5th 1152, 1177 ["'[a]s a general rule, when the Legislature uses a term in one provision of a statute but omits it from another . . . we generally presume that the Legislature did so deliberately, in order "'to convey a different meaning'"'"]; see also *Niedermeier v. FCA US LLC* (2024) 15 Cal.5th 792, 807 [courts cannot add words to the language of a clear and unequivocal statute].)  Moreover, the Committee predated the Indenture, so if the parties to the Indenture intended to make the Committee an owner of the easement, they could have done that.  Thus, while the Committee might have agreed to maintain the easement on behalf of the "second parties," Running did not create a triable issue of material fact regarding whether the Committee had such an obligation as an "owner" of the easement.

> F.     *Running Has Not Shown the Trial Court Prejudicially Erred in Conducting the Trial on Running's Negligence Cause of Action Against CICO*

After the trial court granted the motions by the City and the Committee for nonsuit, the only cause of action tried to the jury was for negligence against CICO.  Running prevailed, and the jury awarded her damages.  She argues, however, the trial court erred in effectively limiting the scope of her cause of action, in instructing the jury, and in drafting the verdict form.  These arguments fail.

1.      *Running Forfeited Any Argument the Trial*
        *Court Erred in Limiting the Scope of Her*
        *Negligence Cause of Action*

Running appears to argue the trial court erred in limiting the scope of her cause of action for negligence to damages caused by CICO's failure to maintain the canal. Her opening brief states: "On August 4, 2023 the [trial court] announced it would not allow counsel to address the jury on water, diversion, tunnel or trees, based on errors Running quitclaimed everything, public health excused diversion, tunnel damages required inverse condemnation and excluding [an expert's] testimony barring tree damages." We do not deny the court made such rulings at some point during pretrial and trial proceedings, but they did not all happen on August 4, 2023. The citations Running provides make passing references to the court's statement the Indenture did not address what would happen if water from the San Gabriel River was diverted, the nature of Running's damages, and Running's damages expert. But neither Running's citations nor her discussion identifies the bases for those rulings, presents arguments why they were wrong, or provides legal and factual support for her assertions. As a result, Running forfeited those arguments.[27] (See *United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153.)

In this section of her brief on her negligence cause of action, Running also appears to argue the trial court erred in applying the three-year statute of limitations under section 338,

---

[27]     Running's reply brief provides several more record citations for those rulings, but still fails to make any legal argument showing error.

subdivision (b), to her cause of action for negligence. The trial court ruled that limitations period, which applies to actions for "injury to real property," applied, but the court made that ruling in denying CICO's motion for directed verdict. In opposing CICO's motion for directed verdict Running did not contest CICO's argument regarding the statute of limitations. Instead, her arguments focused on the discovery rule and tolling.

Running now argues the five-year statute of limitations under section 336, subdivision (b), should apply. Without stating what that statute says or citing any authority, Running asserts it applies to "violations of covenants running with the land, *whether negligent or intentional.*" Even if Running had not forfeited this argument by failing to make it in the trial court,[28] she has not supported the argument with any legal analysis. Moreover, section 336, subdivision (b), does not apply to Running's cause of action against CICO, which is based on its alleged negligent maintenance of the canal. Section 336, subdivision (b), applies to an "action for violation of a restriction, as defined in Section 784 of the Civil Code." In turn, Civil Code section 784 defines "restriction" to mean "a limitation on, or provision affecting, the use of real property in a deed, declaration, or other instrument, whether in the form of a covenant, equitable servitude, condition subsequent, negative easement, or other form of restriction." And a "negative easement" is an easement "preventing acts from being performed on the property." (*Wolford v. Thomas* (1987)

---

[28] In addressing the trial court's tentative ruling on CICO's motion for directed verdict Running argued a "five-year statute" of limitations applied, but she did not cite any statute, and she later argued in the same hearing there was no statute of limitations for "maintaining an easement."

190 Cal.App.3d 347, 354; see 3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 340, p. 2040; 12 Witkin, Summary of Cal. Law (11th ed. 2025) Real Property, § 396.)  In contrast, an "affirmative" easement "allow[s] the doing of acts," like the easement at issue in this case.  (See 12 Witkin, *supra*, § 396.) Affirmative easements are not covered by section 336, subdivision (b).  (See *In re Lerke* (2024) 107 Cal.App.5th 685, 701 [under the "familiar canon of statutory interpretation, *expressio unius est exclusio alterius*, . . . "'the expression of certain things in a statute necessarily involves exclusion of other things not expressed"'"]; see also *Dyna-Med, Inc. v. Fair Employment & Housing Com.* (1987) 43 Cal.3d 1379, 1391, fn. 13 [same].)  The five-year statute of limitations under section 336, subdivision (b), does not apply.

2. *Running Has Not Shown the Trial Court Erred in Instructing the Jury*

In a section of her opening brief called "Error in Instructions Given, Refused, and Verdict Form," Running first argues the trial court erred in instructing the jury on comparative negligence.  She contends "[t]here was no factual or legal basis to instruct on comparative negligence" regarding canal maintenance.  Running does not provide the language of the instruction she is purporting to challenge, state where in the record the court gave that instruction, or give the basis for any objection in the trial court to that instruction.  The record citations she provides concern a discussion of several instructions, including CACI No. 455 ("Statute of Limitations: Delayed Discovery").  The record does not appear to contain any discussion of or objection to the instruction given for comparative

60

negligence (CACI No. 405, "Comparative Fault of Plaintiff").[29] Running forfeited any argument the trial court erred in giving that instruction. (See *McDoniel v. Kavry Management, LLC* (2025) 114 Cal.App.5th 949, 967 [appellant forfeited argument on appeal by failing to object to a proposed jury instruction in the trial court].)

Next, Running makes several arguments concerning the statute of limitations, but she does not tie those arguments to any instruction given or refused or to any specific claimed trial court error, at least in the relevant section of her opening brief. Running forfeited those arguments as well. (See *United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153 [appellant forfeited arguments unsupported by legal authority, specific citations, and cogent arguments]; *Evans v. Hood Corp.* (2016) 5 Cal.App.5th 1022, 1049 [rejecting an argument of instructional error where the appellants cited "no authority supporting their argument that the instruction was legally incorrect"].)

Running argues the trial court refused to give CACI No. 600 regarding the professional standard of care, CACI No. 418 regarding negligence per se based on violations of Water Code sections 1706 and 1745.02, and Running's proposed special instruction No. 29 regarding the obligations of an easement owner. She makes no cogent argument in connection with CACI No. 418 and special instruction No. 29. Regarding CACI No. 600 she states only that "[t]o refuse an instruction on professional standard of care constitutes reversible error," but the cases she

---

[29] The parties waived transcription of the instructions given to the jury; the clerk's transcript includes a copy of them.

61

cites for that proposition are inapposite.[30]  Again, we are not required to make Running's arguments for her, and we conclude they are forfeited and unsupported.  (See *United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153; *Evans v. Hood Corp.*, *supra*, 5 Cal.App.5th at p. 1049.)

### 3. *Running Has Not Shown Any Error in the Verdict Form Prejudiced Her*

The trial court gave the jury two verdict forms.  Verdict Form No. 1 asked the jury six questions on her cause of action for negligence against CICO.  Question 3 of Verdict Form No. 1 asked the jury to quantify Running's "total damages to put the canal . . . in a similar condition as the other property owners along the canal south of the [Running] property."  Question 3 also instructed the jury not to reduce the amount of those damages based on Running's comparative fault, if any.  The jury's answer to Question 3 was $90,000.

Verdict Form No. 2 instructed the jurors that, if they answered Question 3 on Verdict Form No. 1, they had to answer two additional questions.  The first question was whether Running's harm occurred "between 2011 and June 13, 2016."  (As discussed, Running filed her original complaint on June 13, 2016.)  If the jury answered "yes," which it did, the jury was instructed to answer the second question:  "Would the use of

---

[30]     See *Trejo v. Johnson & Johnson* (2017) 13 Cal.App.5th 110, 137 (addressing negligence in the context of a failure-to-warn claim without any reference to CACI No. 600); *Evans v. Hood Corp.*, *supra*, 5 Cal.App.5th at pp. 1049-1052 (trial court did not err in instructing the jury with CACI No. 600, where the evidence "revolved around specialized contractors and specialized gas company employees").

reasonable diligence have disclosed before June 13, 2013 *and [sic] the diversion of water from* the canal on the Running Trust's property contributed to Plaintiffs Praxedes Running and the Running Trust's harm?" (Italics added.) The jury also responded "yes" to this question.

Running argues that the court mistakenly submitted Question 2 on Verdict Form No. 2 to the jury and that the court and the parties had agreed to the following language, which would have replaced the italicized language above with the italicized language below: "Would the use of reasonable diligence have disclosed before June 13, 2013 *that the failure to maintain* the canal on Running Trust's property contributed to Plaintiffs Praxedes Running's and the Running Trust's harm?"

The trial court and the parties had a lengthy discussion about Question 2 on Verdict Form No. 2. Counsel for Running pointed out the question used language referring to "diversion of water from the canal rather than its lack of maintenance." She said, "It's a little difficult to not talk about diversion of water to the jury, and at the same time, these are the questions they have to answer. It doesn't make sense to me."[31] Counsel for CICO said he thought the verdict form was fine "the way it reads," and the court overruled Running's objection. After discussing other aspects of Question 2 counsel for Running again suggested changing "diversion of water" to "failure to maintain and repair the canal," and the court agreed to make that change.

---

[31] As discussed, the trial court previously determined CICO lawfully diverted the water from the canal for health and safety reasons. Thus, Running did not argue to the jury that CICO breached its duty of care to Running by diverting the water.

Apparently a clerical error resulted in the jury receiving Question 2 without that change.

Running argues the language "'diversion of water'" in Question 2 prejudiced her because the jury found Running partially at fault for the condition of the canal. But Running makes no argument and cites no evidence suggesting she would have obtained a better result had the error not occurred. Moreover, as proposed, Question 2 would have asked whether Running should have known before June 13, 2013 the failure to maintain and repair the canal contributed to her harm. This question makes no sense in light of Running's concession during the same hearing that CICO maintained the canal until "the end of 2013." In light of that concession, Question 2 as Running proposed it would have asked whether she should have known before June 13, 2013 that the failure to maintain and repair the canal at the end of 2013 contributed to her harm. Running couldn't have known before June 2013 about something that was not going to happen for six more months.

G.      *Running Has Not Shown the Trial Court Erred in Awarding the City Its Costs*

The City and the Committee submitted memoranda of costs as prevailing parties. (See § 1032, subd. (b).) Because we reverse the judgment for the Committee, we also reverse its costs award. That leaves the court's order and amended judgment awarding the City costs. Running filed a motion to strike and tax the City's costs, which the trial court granted in part. The court entered an amended judgment awarding the City $94,473.54 in costs.

1.    *Applicable Law and Standard of Review*

Under section 1032, subdivision (b), a "prevailing party" is entitled to recover costs as a matter of right unless otherwise provided by statute. (See *Huerta v. Kava Holdings, Inc.* (2018) 29 Cal.App.5th 74, 79; *Charton v. Harkey* (2016) 247 Cal.App.4th 730, 737.) "[A]ll costs awarded to a prevailing party must be incurred by that party, must be 'reasonably necessary to the conduct of the litigation rather than merely convenient or beneficial to its preparation,' and must be reasonable in amount. [Citation.] These limitations apply whether the costs are awarded as a matter of right or in the court's discretion." (*Charton*, at pp. 743-744; accord, *Quiles v. Parent* (2018) 28 Cal.App.5th 1000, 1014; see § 1033.5, subd. (c)(1)-(3).)

We generally review orders denying a motion to tax costs and awarding costs for abuse of discretion. (See *Lampkin v. County of Los Angeles* (2025) 112 Cal.App.5th 920, 926 [award of costs]; *Coastline JX Holdings LLC v. Bennett* (2022) 80 Cal.App.5th 985, 1013 [order denying motion to tax costs].) "Whether to award costs that were incurred by both the prevailing party and the nonprevailing party, and were reasonably necessary to the conduct of the litigation for both the prevailing and nonprevailing party, is left to the trial court's sound discretion based on the totality of the circumstances." (*Charton v. Harkey, supra*, 247 Cal.App.4th at p. 744.) When the question raises an issue of law, such as the interpretation of a statute, our review is de novo. (*Lampkin*, at p. 926.)

2.    *Running's Arguments Lack Merit*

Running does not contend the City was not a prevailing party. Yet she argues the trial court should have awarded her

65

costs and attorneys' fees under Welfare and Institutions Code section 15657.5.[32]  That statute provides for attorneys' fees and costs to a plaintiff who proves a defendant liable for financial elder abuse.  (Welf. & Inst. Code, § 15657.5, subd. (a).)  But Running did not prove the City was liable for elder abuse, so that statute is not applicable.  Running also argues, citing *Locklin v. City of Lafayette* (1994) 7 Cal.4th 327, a "'cost shield'" precluded the court from awarding the City its costs under Code of Civil Procedure section 1032.  In *Locklin* the Supreme Court held "defendants' costs may not be imposed on an inverse condemnation plaintiff in any case in which the plaintiff demonstrates that the actions of a governmental entity damaged the plaintiff's property." (*Id.* at p. 376.)  Running, however, did not allege a cause of action for inverse condemnation or demonstrate the City's actions damaged her property.

Finally, Running makes two arguments regarding apportionment.  First, Running argues the City's cost memorandum did not separate costs incurred to defend against her causes of action for breach of contract or breach of the implied covenant of good faith and fair dealing from costs incurred defending against her cause of action for elder abuse.  The City, however, prevailed on all three causes of action, and Running does not cite any authority requiring the City to separate the costs incurred for each cause of action.

Second, Running appears to argue the trial court erred in awarding the City one-third of the costs all defendants incurred for "designat[ing] witnesses," even though she did not maintain causes of action for trespass and negligence against the City.

---

[32]  Running mistakenly cites Welfare and Institutions Code section 15647.5, which does not exist.

66

(She did allege those causes of action against the City, but the City prevailed on them on demurrer.) Running does not identify any relevant portion of the trial court's ruling, which witnesses were relevant only to the trespass and negligence claims, or whether the court awarded any costs in connection with such witnesses. Moreover, Running does not argue the witnesses listed in the City's cost memorandum did not testify on issues relevant to her contract and elder abuse claims tried against the City. Because Running has not shown the trial court abused its discretion or otherwise erred in awarding the City costs, we affirm the cost award and the amended judgment in the City's favor.

H. *The Trial Court Did Not Err in Denying the City's Motion for Attorneys' Fees*

Following the trial court's order granting the City's motion for nonsuit, the City filed a motion for attorneys' fees and costs under sections 1038 and 2033.420. The trial court denied the motion, and the City timely filed a notice of appeal. Running filed a motion to dismiss that appeal and, in the alternative, argues the trial court did not err in denying the motion. We deny Running's motion to dismiss, but agree with her the trial court did not err in denying the City's motion.

1. *Running's Motion To Dismiss Is Denied*

Running argues we should dismiss the City's appeal from the trial court's order denying the City's motion for attorneys' fees because "appeal of a post-judgment order denying attorneys' fees under [section] 1038 is a separate appeal with its own filing requirements and may not be filed as a cross-appeal. But the

67

City did not file a cross-appeal. The City filed a timely notice of appeal on February 9, 2024 identifying the order it was appealing from as the December 8, 2023 order denying "Defendant's Motion for An Award of Defense Cost."[33] Thus, even under Running's reasoning, her motion to dismiss fails.[34]

>       2.      *The City Has Not Shown the Trial Court*
>               *Abused Its Discretion in Denying the City's*
>               *Motion for Attorneys' Fees Under Section 1038*
>               *and Section 2033.420*

>       a.      *Section 1038*

Section 1038 "'provides public entities . . . a way to recover the costs of defending against unmeritorious and frivolous litigation.'" (*Suarez v. City of Corona* (2014) 229 Cal.App.4th 325, 332; see *Kobzoff v. Los Angeles County Harbor/UCLA Medical Center* (1998) 19 Cal.4th 851, 857; *Clark v. Optical Coating Laboratory, Inc.* (2008) 165 Cal.App.4th 150, 183 [public entities are barred from bringing malicious prosecution suits].) Under section 1038 a court may award reasonable and necessary

---

[33]    The City gave notice of the trial court's ruling on December 12, 2023.

[34]    Running argues for the first time in her reply brief in support of her motion to dismiss the trial court did not have jurisdiction to consider the City's motion for attorneys' fees because it did not "reserve jurisdiction" to hear that motion after the court entered a judgment of nonsuit. Even if Running had not forfeited that argument for failing to make it in her opening brief, and even if Running were correct, that argument does not implicate this court's jurisdiction to consider the City's appeal.

68

"defense costs" (including attorneys' fees) where the court determines the action or proceeding "was not brought in good faith and with reasonable cause." (§ 1038, subds. (a), (b).) "Thus, before denying a section 1038 motion, a court must find the plaintiff brought or maintained an action in the good faith belief in the action's justifiability and with objective reasonable cause." (*Kobzoff*, at p. 862; accord, *Austin B. v. Escondido Union School Dist.* (2007) 149 Cal.App.4th 860, 888; see *Bosetti v. United States Life Ins. Co. in City of New York* (2009) 175 Cal.App.4th 1208, 1226.) "This inquiry 'encompasses not only the filing of an action, but also its continued maintenance.'" (*Suarez*, at p. 336, italics omitted.)

"The case law on the tort of malicious prosecution provides analogous, instructive, and persuasive authority in construing the concept of 'reasonable cause' under section 1038. [Citation.] In particular, the term 'reasonable cause' . . . is synonymous with the term 'probable cause' in malicious prosecution law." (*Clark v. Optical Coating Laboratory, Inc., supra*, 165 Cal.App.4th at p. 183; see *Suarez v. City of Corona, supra*, 229 Cal.App.4th at p. 336.) "Using the perspective of a hypothetical reasonable attorney, courts decide whether reasonable cause exists by (1) analyzing the facts known to the plaintiff when he or she filed or maintained the action and (2) determining whether any reasonable attorney would have thought the claim tenable." (*Smith v. Selma Community Hospital* (2010) 188 Cal.App.4th 1, 32; see *Laabs v. City of Victorville* (2008) 163 Cal.App.4th 1242, 1273-1274.)

"The reasonable cause issue is determined as a matter of law. The question is whether any reasonable attorney would have thought the claim tenable based on the facts known to the

plaintiff and her attorney.  As that issue is determined as a matter of law, it is reviewed on appeal de novo.  [Citation.]  The good faith determination, however, involves a factual inquiry into the plaintiff's state of mind.  As it is a factual issue, it is reviewed on appeal for sufficiency of the evidence." (*Bosetti v. United States Life Ins. Co. in City of New York, supra,* 175 Cal.App.4th at p. 1226; see *Austin B. v. Escondido Union School Dist., supra,* 149 Cal.App.4th at p. 888.)

### i.       *Reasonable Cause*

The trial court ruled Running had reasonable cause for maintaining her elder abuse and contract claims based on the court's order denying a motion for summary adjudication on those claims after *Running I.*  Regarding elder abuse, the City argues the trial court's previous ruling was insufficient to show Running had a reasonable basis for that claim because the court merely found the City did not meet its initial burden on summary adjudication.  In *Clark v. Optical Coating Laboratory, Inc., supra,* 165 Cal.App.4th 150, however, the court held previous rulings allowing a plaintiff to "try their case to a jury although not to a verdict" necessarily demonstrates a reasonable basis for bringing and maintaining the action under section 1038.  (*Clark,*  at p. 184.)  "'It would be a "'hard law,'" indeed, that "'would render a plaintiff liable in damages for instituting an action . . . in the event that, notwithstanding a judge of the superior court was satisfied that upon those facts the plaintiff had a meritorious case, a ruling to that effect should afterwards be set aside.'"''" (*Id.* at pp. 184-185; see *Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 822 [considering probable cause in the context of a special motion to strike].)

The City also argues Running conceded in her discovery responses that no employee of the City or AVWC committed elder abuse. Thus, the City contends, Running had no reasonable basis to maintain that cause of action after the discovery cut-off. The City mischaracterizes Running's discovery responses by suggesting Running conceded she could not maintain a claim for elder abuse against the City. While she conceded she did not contend any employee of the City or AVWC "committed the misconduct" she alleged, she argued the City was liable for that conduct as a member of the Committee, and she identified certain individuals, including Don Berry, who "sat on the [Committee] on behalf of the City." That Running could not prove her theory of vicarious liability was not a foregone conclusion. The trial court did not err in ruling Running had a reasonable basis for maintaining her cause of action for elder abuse.

The trial court also ruled Running had a reasonable basis for bringing and maintaining her contract claims, again based on the court's rulings following the defendants' motion for summary adjudication. In that decision the court ruled Running created a triable issue of material fact regarding whether the City breached its obligation to maintain the canal under the Indenture. The City argues that ruling was not sufficient to establish a reasonable basis for pursuing those claims because Running "knew, or reasonably should have known, that the City was not responsible for maintaining the canal." But as discussed in the context of the Committee's possible liability for negligence, all the defendants remaining in the action after *Running I* were members of the Committee, and Running alleged that, as such, each defendant was jointly and severally liable for the actions of the others. That Running might have known CICO took the lead

71

on maintaining the canal does not negate that theory of liability. The trial court did not err in ruling Running had a reasonable basis for maintaining her cause of action for breach of contract and breach of the implied covenant of good faith and fair dealing.

### ii.    *Good Faith Belief*

Regarding Running's good faith belief in her action's justifiability, the court pointed to *Running I* and Running's "'extremely extensive evidentiary cites and declarations amounting to thousands of pages'" in support of her opposition to the defendants' motion for summary adjudication filed after remand.  The court also observed the City failed to identify any contradictory evidence that would defeat Running's "subjective belief."

The City "respectfully disagree[s]" with the trial court's ruling and argues that after discovery Running "had to have known [she] could not prove a breach of the Indenture."  The City's argument, however, does not address Running's cause of action for elder abuse.  Moreover, with regard to the contract claims, the City is wrong.  But for the City's argument the Indenture is against public policy for creating perpetual duties to supply water to Running and to maintain the canal, the City would likely face trial on those causes of action.  The trial court did not abuse its discretion in ruling Running brought and maintained her causes of action in good faith.

### b.    *Section 2033.420*

Section 2033.420, subdivision (a), states:  "If a party fails to admit the genuineness of any document or the truth of any matter when requested to do so under this chapter, and if the

72

party requesting that admission thereafter proves the genuineness of that document or the truth of that matter, the party requesting the admission may move the court for an order requiring the party to whom the request was directed to pay the reasonable expenses incurred in making that proof, including reasonable attorney's fees." Subdivision (b) of section 2033.420 states a "court shall make this order unless it finds . . . [¶] . . .[¶] (3) [t]he party failing to make the admission had reasonable ground to believe that that party would prevail on the matter."

When a party denies a request for admission, "'[t]he question is not whether a reasonable litigant would have denied the RFAs. Nor is the question simply whether the litigant had some minimum quantum of evidence to support its denial (i.e., "probable cause"). The relevant question is whether the litigant had a reasonable, good faith belief he or she would prevail on the issue at trial.'" (*Samsky v. State Farm Mutual Automobile Ins. Co.* (2019) 37 Cal.App.5th 517, 526; see *Yoon v. CAM IX Trust* (2021) 60 Cal.App.5th 388, 394.) We review for an abuse of discretion the trial court's finding a plaintiff had a reasonable ground for believing he or she would prevail. (*Orange County Water Dist. v. The Arnold Engineering Co.* (2018) 31 Cal.App.5th 96, 118; see *id.* at p. 119 ["Because the trial court supervises discovery and presides over trial, it is in a much better position to . . . decide whether, in its discretion, the party who made the denials should be responsible for costs of proof on the issue."].)

The City argued Running did not have reasonable grounds to deny certain requests for admission concerning her elder abuse and contract causes of action because she had no evidence to support those causes of action and the City in fact prevailed on them. Specifically, the City argued Running called only two City

73

employees to testify at trial, from which the City inferred Running had no evidence a City employee was responsible for financial elder abuse. Regarding the contract claims, the City argued "it also should have been obvious" CICO owned the canal and took the canal out of service for health and safety reasons. The trial court denied the City's motion based on the existence of triable issues of material fact on the elder abuse and contract causes of action, which the court found gave Running a "reasonable basis for believing [she] would prevail."

The City argues the trial court erred for the same reasons it erred in denying the City's motion for attorneys' fees under section 1032. Those reasons similarly fail here. The trial court did not abuse its discretion in finding Running had a reasonable, good faith belief she would prevail on her elder abuse and contract claims at trial.

## DISPOSITION

The judgment for the City is affirmed. The City is to recover its costs on appeal. The judgment for CICO and the Committee on Running's causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, and fraud is reversed. In all other respects, the judgment is affirmed. Running's motion to dismiss the City's appeal is denied. Running, CICO, and the Committee are to bear their costs on appeal.

SEGAL, Acting P. J.

We concur:

FEUER, J.          STONE, J.

74